**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **GILBERTO GOMEZ VICENTE, et al.,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:20-cv-00081** |
| | § | |
| **UNITED STATES OF AMERICA;** | § | |
| **ROMUALDO BARRERA, Agent, United** | § | |
| **States Border Patrol, in his individual** | § | |
| **capacity; and DOES 1-20, Agents, United** | § | |
| **States Border Patrol, in their individual** | § | |
| **capacities,** | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT ROMUALDO BARRERA'S MOTION TO DISMISS
PLAINTIFFS' *BIVENS* CLAIMS**

**DAVIS & SANTOS, P.C.**
Jason M. Davis
**Attorney-In-Charge**
State Bar No. 00793592
Southern District of Texas Bar No. 20114
E-mail: *jdavis@dslawpc.com*
H. Jay Hulings
State Bar No. 24104573
Southern District of Texas Bar No. 3472684
E-mail: *jhulings@dslawpc.com*
719 South Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5882
Fax: (210) 200-8395

*Attorneys for Defendant Romualdo Barrera*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. 2

I.    INTRODUCTION ................................................................................................... 4

II.   RELEVANT FACTUAL ALLEGATIONS .......................................................... 5

III.  ARGUMENT AND AUTHORITIES .................................................................... 6

    A.    Dismissal under Rule 12(b)(6). ................................................................... 6

    B.    Plaintiffs fail to plead a viable *Bivens* claim. ........................................... 7

        1.    Plaintiffs' claims present a new *Bivens* context. ....................................... 8

            a.    Plaintiffs' Third and Fourth Causes of Action are meaningfully  different  than *Bivens* ........................................................................................ 10

            b.    Plaintiffs' Fifth and Sixth Causes of Action are also meaningfully different than *Davis* ...................................................................................... 12

            c.    Pre-*Abbasi* decisions are factually distinguishable and legally suspect ..................... 12

        2.    Several independent special factors counsel against extending *Bivens* into the new context that Plaintiffs' claims present ...................................................... 14

            a.    There is an alternative remedial structure .............................................. 14

            b.    The probable intent of Congress suggests restraint ................................ 17

            c.    National security concerns weigh against extending *Bivens* .................. 18

IV.   CONCLUSION ...................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                  **Page(s)**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................ 6

*Bivens v. Six Unknown Federal Agents,*
  403 U.S. 388 (1971) ............................................................................... 3, 6, 7, 10

*Cantú v. Moody,*
  933 F.3d 414 (5th Cir. 2019) ............................................... 7, 8, 9, 10, 11, 12, 14

*Carcamo-Lopez v. Does 1 through 20,*
  865 F. Supp. 2d 736 (W.D. Tex. 2011) ............................................................... 16

*Carlson, v. Green,*
  446 U.S. 14 (1980) ........................................................................................... 8, 15

*Chappell v. Wallace,*
  462 U.S. 296 (1983) ...................................................................................... 8, 9, 12

*Corr. Servs. Corp. v. Malesko,*
  534 U.S. 61 (2001) .............................................................................................. 8, 9

*Davis v. Passman,*
  442 U.S. 228 (1979) .................................................................................... 8, 11, 12

*De La Paz v. Coy,*
  786 F.3d 367 (5th Cir. 2015) ..................................................................... 12, 13, 17

*Hernandez v. Mesa,*
  140 S. Ct. 735 (2020) ......................................... 7, 11, 12, 13, 14, 15, 18, 19

*Maria S. as Next Friend for E.H.F. v. Garza,*
  912 F.3d 778 (5th Cir. 2019) ......................................................................... 13, 17

*Martinez-Aguero v. Gonzalez,*
  459 F.3d 618 (5th Cir. 2006) ......................................................................... 12, 13

*Mendez v. Poitevent,*
  823 F.3d 326 (5th Cir. 2016) ................................................................................ 13

*Minneci v. Pollard,*
  565 U.S. 118 (2012) ............................................................................................. 15

*Moore v. Lillebo*,
    722 S.W.2d 683 (Tex. 1986) ....................................................................................... 16

*Nieto v. Nationwide Prop. & Cas. Ins. Co.*,
    No. CV H-10-3445, 2011 WL 13249267 (S.D. Tex. Jan. 10, 2011) ........................... 4

*Oliva v. Nivar*,
    --- F.3d ---, 2020 WL 5227472 (5th Cir. Sept. 2, 2020) ............................... 7, 10, 11, 12, 14, 15

*Papasan v. Allain*,
    478 U.S. 265 (1986) ..................................................................................................... 6

*Peña Arita v. United States*,
    No. 7:19-CV-00288, 2020 WL 3542256 (S.D. Tex. June 30, 2020) ......................... 17

*Russell v. Ingersoll-Rand Co.*,
    841 S.W.2d 343 (Tex. 1992) ....................................................................................... 16

*Walker v. Houston Hous. Auth.*,
    No. CV H-19-2736, 2020 WL 1855196 (S.D. Tex. Mar. 24, 2020) ........................... 4

*Ziglar v. Abbasi*,
    137 S. Ct. 1843, 1855 (2017) ............................................... 7, 8, 9, 11, 13, 14, 16, 17

**Statutes**

6 U.S.C. § 211(c)(5) ........................................................................................................... 18

Tex. Civ. Prac. & Rem. Code Ann. § 71.009 .................................................................. 16

**Rules**

Federal Rule of Civil Procedure 8(a) ................................................................................. 6

Federal Rule of Civil Procedure 12(a)(4) .......................................................................... 4

Federal Rule of Civil Procedure 12(b)(6) .......................................................................... 4

TO THE HONORABLE COURT:

Defendant Romualdo Barrera ("**Agent Barrera**" or "**Defendant**"), hereby files this Motion to Dismiss Causes of Action Three, Four, Five, and Six in the Complaint [Dkt. 1] filed by Gilberto Gomez Vicente, Lidia Gonzalez Vasquez, and Ricardo de Anda (collectively, "**Plaintiffs**"), and states as follows:

## I.   INTRODUCTION

1.      The Complaint filed by Plaintiffs on behalf of Claudia Patricia Gomez Gonzalez ("**Decedent**") alleges that on May 23, 2018, Agent Barrera encountered the Decedent and a group of others in a vacant lot in Rio Bravo, Texas.  The Complaint further alleges that Agent Barrera drew his service weapon and fired on the group, killing the Decedent.  Plaintiffs assert claims under the Federal Tort Claims Act ("**FTCA**") against the United States and under *Bivens v. Six Unknown Federal Agents*, 403 U.S. 388 (1971), and state battery law against Agent Barrera.

2.      The Complaint itself concedes that the government's version of events is quite different – that the group had attacked Agent Barrera, leading to the Decedent's unfortunate death.  But even if the version of events alleged by Plaintiffs is taken as true, the Complaint does not state a viable *Bivens* claim under recent decisions of the Supreme Court and the Fifth Circuit Court of Appeals.

3.      Agent Barrera therefore respectfully requests that this Court dismiss Plaintiffs' *Bivens* claims – the Third, Fourth, Fifth, and Sixth Causes of Action – for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1]

---

[1] The filing of a motion to dismiss for failure to state a claim postpones the deadline for filing an answer until fourteen days after notice of the court's ruling if that ruling is a denial of the motion. *See Walker v. Houston Hous. Auth.*, No. CV H-19-2736, 2020 WL 1855196, at *4 (S.D. Tex. Mar. 24, 2020), report and recommendation adopted, No. CV H-19-2736, 2020 WL 1848056 (S.D. Tex. Apr. 13, 2020).  The filing of a motion for partial dismissal similarly postpones a party's obligation to file an answer to the complaint until after the court has ruled on the pending motion.  *See Nieto v. Nationwide Prop. & Cas. Ins. Co.*, No. CV H-10-3445, 2011 WL 13249267, at *2 fn. 6 (S.D. Tex. Jan. 10, 2011). As such, Agent Barrera reserves the right to file his original Answer to Plaintiffs' remaining claims at a later date as permitted under Federal Rule of Civil Procedure 12(a)(4).

## II.   RELEVANT FACTUAL ALLEGATIONS

4.      The Complaint alleges that Agent Barrera was a U.S. Border Patrol Agent assigned to the Laredo South Station.  Complaint ¶¶11, 14.  Plaintiffs assert that Agent Barrera was acting within the scope and course of his employment with the U.S. Border Patrol.  *Id.* ¶13.

5.      The Complaint further alleges that on May 23, 2018, the Decedent was traveling with "a few other people" along Centeno Lane in Rio Bravo, Texas, which is about one-third of a mile from the Rio Grande.  *Id.* ¶20.  She allegedly was not carrying a weapon or "anything that could be perceived as a weapon."  *Id.* ¶21.

6.      The Decedent and her group were allegedly "in the corner of a private, residential, fenced-in lot with overgrown weeds and brush" when Agent Barrera encountered them.  *Id.* ¶22.

7.      The Complaint alleges that two people from the group ran toward the river and two others ran toward a nearby mobile home.  *Id.* ¶23.  The Decedent and another person allegedly stayed in the vacant lot.  *Id.*

8.      The Complaint alleges that Agent Barrera drew his weapon and, when the Decedent took a step, "aimed at her, pulled the trigger, and shot her in the head."  *Id.* ¶24.  Agent Barrera then allegedly chased the two men who hid in the mobile home.  *Id.*  The Complaint alleges that the Decedent died shortly after other Border Patrol agents arrived on the scene.  *Id.* ¶¶ 24, 25.

9.      The Complaint further alleges that the Decedent and the people in Decedent's group did not possess any weapons and did not pose any threat to Agent Barrera, "let alone as posing any imminent danger of serious physical injury or death."  *Id.* ¶28.

10.      The Complaint notes that U.S. Customs and Border Protection ("**CBP**") issued a press release stating that members of the Decedent's group had used "blunt objects" to attack a Border Patrol agent and that the Decedent was one of the attackers.  *Id.* ¶29.  Plaintiffs allege that CBP later retracted the release and released a new release that omitted the reference to "blunt objects" and to the Decedent

being one of the people who attacked the agent.  *Id.*  The Complaint claims – on "information and belief" – that CBP retracted the first release because it had determined that the agent's claim that he was assaulted was not credible.  *Id.*

### III.   ARGUMENT AND AUTHORITIES

#### A.  Dismissal under Rule 12(b)(6).

11.     Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim must be dismissed if the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The general pleading standard set forth in Federal Rule of Civil Procedure 8(a) states that a pleading must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  While Rule 8(a) does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotations omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating that courts are not bound to accept as true legal conclusions couched as factual allegations).

12.     A claim cannot survive a Rule 12(b)(6) motion to dismiss unless it contains sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (internal citation and quotations omitted).  It is not enough to show "a sheer possibility that a defendant has acted unlawfully."  *Id*.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*  (internal citation and quotations omitted).  Dismissal is also warranted where the pleading offers only "a formulaic recitation of the elements of a cause of action" and "naked assertions" devoid of "further factual enhancement."  *Id.*  (internal citation and quotations omitted).

6

### B. **Plaintiffs fail to plead a viable *Bivens* claim.**

13.     In 1971, the Supreme Court in *Bivens* found an implied civil cause of action for damages against federal agents for violations of a plaintiff's Constitutional rights.  403 U.S. at 396-97. Recently, however, the Supreme Court has warned that *Bivens* was the product of an "*ancien regime*" that freely implied rights of action.  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).  Though *Bivens* has not yet been formally overturned, recent decisions of the Supreme Court and other courts have severely limited its scope.

14.     Courts evaluating *Bivens* claims must engage in a two-step inquiry.  *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).  First, the court must inquire whether the request involves a claim that arises in a "new context" or involves a "new category of defendants."  *Id.*  A context is "new" if it is "different in a meaningful way from previous *Bivens* cases decided by the Supreme Court."  *Id.* (internal citations and quotation marks omitted).  As detailed below, the Supreme Court and the Fifth Circuit have required a nearly identical fit between the facts alleged in a given case and those of the *Bivens* cases previously approved by the Supreme Court.  Even alleging a violation of the same constitutional provision in the same way "***doesn't cut it***."  *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) (emphasis added).

15.     Second, if the court finds that a claim arises in a new context, it must determine whether there are any "special factors that counsel hesitation" about granting an extension of *Bivens* to that new context.  *Id.* (internal quotations omitted).  If there are such special factors – that is, if the court has reason to pause before applying *Bivens* in a new context or to a new class of defendants – the court must reject the plaintiff's request.  *Id.*  As the Fifth Circuit observed earlier this month, "to put it mildly, extending *Bivens* to new contexts is a ***'disfavored judicial activity*.'**"  *Oliva v. Nivar*, --- F.3d ---, 2020 WL 5227472, at *2 (5th Cir. Sept. 2, 2020) (quoting *Abbasi*, 137 S. Ct. at 1857) (emphasis added).

16.     Here, the facts alleged in the Complaint do not match any of the three factual scenarios

previously approved by the Supreme Court and thus this case presents a "new context."  This case also does not satisfy the exceedingly high bar for extending *Bivens*.  These claims must therefore be dismissed.

### 1.  Plaintiffs' claims present a new *Bivens* context.

17.     The Supreme Court has recognized *Bivens* claims on three occasions.  First, in *Bivens* itself, federal agents violated a plaintiff's Fourth Amendment rights when they entered the plaintiff's home without a warrant, manacled the plaintiff in front of his family, strip searched the plaintiff, and threatened to arrest the plaintiff's family.  *Bivens*, 403 U.S. at 389–90.  Second, in *Davis v. Passman*, 442 U.S. 228 (1979), the Supreme Court recognized an implied right of action under the Fifth Amendment for an employment discrimination claim against a U.S. congressman.  Third, in *Carlson*, *v. Green*, 446 U.S. 14 (1980), the Court recognized an implied right of action under the Eighth Amendment for failure to provide medical attention to an asthmatic prisoner in federal custody.

18.     Since 1980, the "Court has refused every *Bivens* claim presented to it."  *Cantú*, 933 F.3d at 421.  Though it has not overturned *Bivens*, *Davis*, or *Carlson*, it has noted that the analysis of these decisions "might have been different if they were decided today."  *Abbasi*, 137 S. Ct. at 1856.  It has also refused to recognize implied rights of action in cases with seemingly modest differences from the three approved *Bivens* cases.  *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (refusing to extend *Carlson* to a claim against private prison officials, as opposed to those employed by the federal government, for failure to provide medical care); *Chappell v. Wallace*, 462 U.S. 296, 305 (1983) (refusing to extend *Davis* to a claim under the Fifth Amendment brought by a servicemember, as opposed to a congressional employee); *see also Cantú*, 933 F.3d at 422 (collecting cases).

19.     In *Abbasi*, the Supreme Court expressly rejected the argument that *Bivens* claims could be extended to cases that involved the same constitutional right and even the same "mechanism of

injury" involved in previous *Bivens* cases.  *Abbasi*, 137 S. Ct. at 1859–60.  Rather, courts must

determine whether a case "is different in a meaningful way from previous *Bivens* cases decided by the

Court."  *Id.* at 1859.  The Court provided a non-exhaustive list of differences that are meaningful

enough to make a given context a new one:

> A case might differ in a meaningful way because of [1] the rank of the
> officers involved; [2] the constitutional right at issue; [3] the generality
> or specificity of the official action; [4] the extent of judicial guidance
> as to how an officer should respond to the problem or emergency to be
> confronted; [5] the statutory or other legal mandate under which the
> officer was operating; [6] the risk of disruptive intrusion by the
> Judiciary into the functioning of other branches; or [7] the presence of
> potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859–60.  The Court also cautioned that this non-exhaustive list is to be interpreted broadly,

noting that "the new-context inquiry is easily satisfied" and that "even a modest extension" of the

previous *Bivens* cases "is still an extension."  *Id.* at 1864–65.

20.     Two Fifth Circuit decisions following *Abbasi* have reinforced that all cases other

than those with virtually identical facts to the three approved *Bivens* cases will be considered a

"new context."  In *Cantú*, the plaintiff (an alleged leader of the Mexican Mafia) accused federal agents

of fabricating evidence that was the basis for his arrest for distribution of heroin and conspiracy.  933

F.3d at 418.  The Court first observed that *Abbasi* and other Supreme Court decisions require similarity

to approved *Bivens* cases beyond the type of right allegedly infringed and  manner of infringement:

"What if a plaintiff asserts a violation of the same clause of the same amendment *in the same way*?

That still doesn't cut it."  *Id.* at 422 (emphasis in original) (discussing the Supreme Court's decisions

in *Chappell*, 462 U.S. at 305, and *Malesko*, 534 U.S. at 74).  The Court then reviewed the factors

articulated by *Abbasi* and observed that "[t]his claim involves **different conduct** by **different officers**

from a **different agency**."  *Id.* at 423 (emphasis added).  The Court further noted that "'[j]udicial

guidance' differs across the various kinds of Fourth Amendment violations—like seizures by deadly

force, searches by wiretap, *Terry* stops, executions of warrants, seizures without legal process . . . , seizures with wrongful legal process . . . , etc." *Id.* These differences were enough to find a new context.

21.     Similarly, in *Nivar*, decided just this month, the Fifth Circuit rejected the plaintiff's claim that his arrest and chokehold by police at a VA hospital was the same context as *Bivens*. 2020 WL 5227472 at *3. Following *Abbasi* and *Cantú,* the Court found numerous "meaningful differences" with *Bivens*, including the location (a government hospital rather than a home), the nature of the incident (a search at a metal detector rather than a warrantless search and seizure), the legal mandate (the hospital's ID policy rather than laws governing search and seizure), the type of force used (a choke-hold rather than a strip search), and the differing legal guidance in the two types of incidents. *Id.* "In short," the Court concluded, the claim in *Nivar* involved "different conduct by different officers from a different agency." *Id.* (quoting *Cantú*, 933 F.3d at 423).

22.     Under this exacting standard established by these cases, Plaintiffs' claims present a new *Bivens* context.

                    a.   <u>Plaintiffs' Third and Fourth Causes of Action are
                         meaningfully different than *Bivens*.</u>

23.     Plaintiffs' Third and Fourth Causes of Action allege that Agent Barrera violated the Decedent's rights under the Fourth Amendment to be free from unreasonable seizures by using excessive force. *Bivens* also involved an alleged unconstitutional seizure of a person under the Fourth Amendment, but that is where the relevant similarities end. *Bivens* involved agents of the Federal Bureau of Narcotics, *Bivens*; this case involved a different agency, the United States Border Patrol. *Bivens* involved a warrantless search of the plaintiff's home; this case involves an encounter in a vacant lot near the U.S.-Mexico border. *Bivens* involved the temporary detention of the plaintiff and a strip search; this case involves a quick-moving encounter in which the

Decedent was shot.  *Bivens* involved the law regarding searches and seizures; this case involves the law regarding the use of deadly force.

24.     These are not mere arbitrary differences.  Differences in agencies, personnel, the type of official action, and the significant differences in the judicial guidance governing use of deadly force and illegal searches are precisely the sort of differences identified as "meaningful" in *Abbasi* and other decisions.  *See Abbasi*, 137 S. Ct. at 1859–60; *Nivar*, 2020 WL 53227472 at *3; *Cantú*, 933 F.3d at 423.  Indeed, as in *Cantú* and *Nivar*, this case involves "different conduct by different officers from a different agency."  *Cantú*, 933 F.3d at 423.  It thus involves a new context from previous, approved *Bivens* cases.

25.     Notably, the Supreme Court recently held very similar circumstances to be a new *Bivens* context.  In *Hernandez*, a Border Patrol Agent on the U.S. side of the border shot and killed a 15-year-old Mexican national who was on the Mexico side of the border.  140 S. Ct. at 740.  The victim's parents sued under *Bivens*, alleging that the Border Patrol Agent violated their son's Fourth and Fifth Amendment rights.  *Id.*  The Court summarily concluded that "[t]he *Bivens* claims in this case assuredly arise in a new context."  *Id.* at 743.  The Court rejected the plaintiffs' argument that their claims involved the same constitutional provisions as *Bivens* and *Davis* as resting on a "basic misunderstanding of what our cases mean by a new context."  *Id.*  The Court then observed that "there is a world of difference" between its previous cases and the "cross-border shooting claims" at issue in *Hernandez*, where the "risk of disruptive intrusion by the Judiciary into the functioning of other branches is significant," citing the parts of its opinions that concern the national security role played by Border Patrol agents (discussed in more detail below) and other factors.  *Id.* at 744.  The relevant facts here fall squarely within the Supreme Court's *Hernandez* opinion, requiring a finding of a new context.

b.  Plaintiffs' Fifth and Sixth Causes of Action are also meaningfully different than *Davis*.

26.     Plaintiffs' Fifth Cause of Action alleges that Agent Barrera violated the Decedent's Fifth Amendment Substantive Due Process rights.   Though that is the same constitutional provision at issue in *Davis*, the cases share almost nothing else in common.   *Davis* involved a claim of employment discrimination against a congressman by a member of his staff.   442 U.S. at 230. This case involves a different agency (Border Patrol), a different location (a vacant lot near the border), and a very different alleged violation (excessive force).   The Supreme Court found that a case involving a much more analogous set of facts – an employment discrimination claim by a servicemember – did not warrant extending *Davis*.   *See Chappell*, 462 U.S. at 305.   A case involving a shooting along the border obviously does not either.   *See Hernandez*, 140 S. Ct. at 740 (concluding that cross-border shooting by a Border Patrol Agent presented a new context from *Davis*).

c.  Pre-*Abbasi* decisions are factually distinguishable and legally suspect.

27.     Prior decisions recognizing excessive force claims under *Bivens* are either factually distinguishable or have been effectively overturned by the more recent decisions in *Abbasi*, *Hernandez*, *Cantú*, and *Nivar*.

28.     For example, in *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 620 (5th Cir. 2006), the Fifth Circuit allowed a *Bivens* claim to proceed brought by an undocumented immigrant for alleged physical abuse in a government facility.   The Court rejected an argument that undocumented immigrants have no constitutional rights.   *Id.* at 625.   However, the defendant never challenged whether a *Bivens* remedy was available.   *Id.* at 620.   While allowing the claim to proceed, the Fifth Circuit did not address the question.   *Id.*   The Fifth Circuit later noted, in *De La Paz v. Coy*, that *Martinez-Aguero* had tacitly accepted a *Bivens* claim for excessive force against

aliens held in immigration custody, despite "tension with ensuing pronouncements of the Supreme Court."  786 F.3d 367, 373 (5th Cir. 2015).  The Court in *De La Paz* left *Martinez-Aguero* intact but distinguished the earlier decision on its facts.  *Id.* at 374.  This Court should do the same, as the present case presents a different alleged use of force (a shooting rather than abuse in custody), location (on the street near the border rather than in a government facility), and legal context (use of force rather than treatment of detainees).  Given the fact-specific inquiry required by *Abbasi*, *Hernandez*, and other recent decisions, these differences are meaningful and require finding a new context.[2]

29.     In any event, *Martinez-Aguero* and *De La Paz* both predate the Supreme Court's opinions in *Abbasi* and *Hernandez*, which (as detailed above) significantly tightened the scope of *Bivens* claims.  The Fifth Circuit has also reversed district court decisions relying on pre-*Abbasi* precedent to extend *Bivens* claims in wrongful death cases.  In *Maria S. as Next Friend for E.H.F. v. Garza*, the Fifth Circuit held that the district court "erred as a matter of law" when it denied defendants' motion to dismiss for lack of a *Bivens* remedy in a wrongful death case, noting that the district court had "lacked the guidance of the Supreme Court's recent elucidation of *Bivens* in [*Abbasi*]."  912 F.3d 778, 783 (5th Cir. 2019).  Indeed, the precedential value of the *Martinez-Aguero* and other decisions permitting excessive force claims under *Bivens* is even more suspect after *Hernandez*, which summarily rejected the notion that a shooting on the border was in any way similar to *Bivens* and *Davis*, thereby finding that the claim presented a new context. *Hernandez*, 140 S. Ct. at 740.

---

[2] Similarly, in *Mendez v. Poitevent*, 823 F.3d 326, 331–33 (5th Cir. 2016), the Fifth Circuit granted the defendant's motion for summary judgment on *Bivens* claims arising from a shooting by a border patrol agent near the U.S.-Mexico border.  The Court granted the motion on qualified immunity grounds and did not consider whether plaintiffs had alleged a viable *Bivens* claim.  *Id.*

13

30.     The Plaintiffs' claims thus differ meaningfully from the established *Bivens* cases and "the new-context inquiry is easily satisfied." *Abbasi*, 137 S. Ct. at 1865.  The analysis then shifts to the second prong.

**2.     Several independent special factors counsel against extending *Bivens* into the new context that Plaintiffs' claims present.**

31.     The second question in the *Bivens* analysis is whether the Court should engage in the "disfavored judicial activity" of recognizing a new *Bivens* claim.  *Cantú*, 933 F.3d at 423.  The answer in this case should be the same as in *Abassi*, *Mesa*, *Cantú, Nivar*, and a multitude of other cases – **<u>no</u>**.

32.     "When a party seeks to assert an implied cause of action under the Constitution, separation-of-powers principles should be central to the analysis." *Abbasi*, 137 S. Ct. at 1857.  The central question is whether Congress or the courts should decide whether to provide a damages remedy in a given incident.  *Hernandez*, 140 S. Ct. at 750.  The Supreme Court has made the answer clear: "***The answer most often will be Congress***." *Abbasi*, 137 S. Ct. at 1857 (emphasis added).  If a court believes the answer is Congress, then it "must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Abbasi*, 137 S. Ct. at 1858.

33.     The Supreme Court has directed courts not to recognize a new *Bivens* claim if there are "special factors counseling hesitation in the absence of affirmative action by Congress." *Id.* at 1857.  This case presents a myriad of such special factors.

a.   <u>There is an alternative remedial structure.</u>

34.     First, a damages scheme already exists for plaintiffs alleging the types of Fourth and Fifth Amendment violations alleged here.   As the Supreme Court explained in *Abbasi*: "[I]f there is an alternative remedial structure present in a certain case, ***that alone may limit the power***

14

*of the Judiciary to infer a new Bivens action*."  *Abbasi*, 137 S. Ct. at 1858 (emphasis added). "And when alternative methods of relief are available, a *Bivens* remedy usually is not."  *Id.* at 1863.

35.     The Fifth Circuit has recognized that the existence of a statutory scheme for torts committed by federal officers – the Federal Tort Claims Act (the "**FTCA**") – weighs strongly against inferring a new *Bivens* cause of action.  In *Nivar*, the plaintiff unsuccessfully pursued an administrative complaint and then sued the United States under the FTCA, in addition to suing the individual federal officers under *Bivens*.  2020 WL 5227472 at \*4.  The Fifth Circuit held plaintiff's own claims demonstrated the existence of an alternative remedial scheme.  *Id.* (noting that the plaintiff followed the process prescribed by Congress in filing his FTCA claims).  The Court also rejects the argument that the FTCA does not cover excessive force claims: "That the FTCA might not give [the plaintiff] everything he seeks is . . . no reason to extend *Bivens*."  *Id.*; *see also Hernandez*, 140 S. Ct. at 750 ("Congress's decision not to provide a judicial remedy does not compel us to step into its shoes.").

36.     As the Complaint concedes, Plaintiffs have already sought relief under the same alternative remedial scheme identified in *Nivar*.  Plaintiffs pursued relief through an administrative proceeding through the U.S. Department of Homeland Security, U.S. Customs and Border Protection, and U.S. Border Patrol.  *See* Complaint at ¶4.  Once six months passed with no agency action, Plaintiffs then filed the suit at hand.  *See id.*  In this suit, in addition to the *Bivens* claims, Plaintiffs are pursuing damages against the United States through the FTCA.  *See id.* ¶¶30–44.

37.     Moreover, Plaintiffs also pursue damages against Agent Barrera through state-law tort claims.  *See* Complaint ¶¶ 84–95.  In *Minneci v. Pollard*, 565 U.S. 118, 126–27 (2012), the Supreme Court found the existence of an alternative state-tort damages remedy sufficient to reject the request to extend *Bivens* into a new context.  *Minneci* involved claims that a privately operated

federal prison violated the plaintiff's Eighth Amendment rights by failing to provide adequate medical care – facts that were remarkably similar to those at issue in *Carlson*. *Id.* at 121–22.  Yet the Court refused to find an implied right of action because, unlike in *Carlson*, state law offered the plaintiff a meaningful damages remedy.  *Id.* at 128–29.  The Court rejected arguments that the state law involved different procedural obstacles: "[T]he question is whether, in general, state tort law remedies provide ***roughly similar incentives*** for potential defendants to comply with the Eighth Amendment while also providing ***roughly similar compensation*** to victims of violations." *Id.* at 130 (emphasis added).

38.     Here, Plaintiffs allege that Agent Barrera can be held liable for state law battery claims and seek the same monetary damages that they seek through their *Bivens* claims.  Complaint ¶¶84-95; *see also Carcamo-Lopez v. Does 1 through 20*, 865 F. Supp. 2d 736, 762 (W.D. Tex. 2011) (considering plaintiff's state law assault and battery claims based on Border Patrol Agent running plaintiff over in vehicle).  Those damages are comparable to those sought through Plaintiffs' *Bivens* claims and plainly provide similar incentives to follow the law and similar compensation to victims.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.009 (allowing for both exemplary and actual damages under the wrongful death statute); *Moore v. Lillebo*, 722 S.W.2d 683, 687 (Tex. 1986) (explaining damages in wrongful death cases include pecuniary loss, loss of inheritance, mental anguish, and loss of society and companionship); *Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992) (stating that the damages recoverable under the survival statute are those which plaintiff sustained and was entitled to prior to her death).

39.     The availability of the FTCA and state law battery claims as alternative remedies thus weighs strongly against extending *Bivens* to Plaintiffs' claims.

          b.   <u>The probable intent of Congress suggests restraint.</u>

40.     A second "special factor" – the likely or probable intent of Congress – also weighs against extending *Bivens* to this case.

41.     Courts evaluating the likely or probable intent of Congress must consider Congress' silence.  *See Abbasi*, 137 S. Ct. at 1862.  When Congress has legislated extensively in a given subject area, its failure to provide a damages remedy for violations of rights that arise within that area could suggest that the silence was deliberate.  *Id*.  As the *Abbasi* Court put it: "[W]hen Congress fails to provide a damages remedy in circumstances like these, it is much more difficult to believe that congressional action was inadvertent."  *Id*.

42.     The Fifth Circuit has concluded that immigration enforcement is one of those areas in which Congress' reluctance to create a cause of action for damages must caution against the extension of *Bivens*.  In *De La Paz*, 786 F.3d at 377, for instance, the Fifth Circuit declined to extend *Bivens* to claims by undocumented immigrants against CBP agents for illegally stopping and arresting them, in part because of Congress' silence:

> Despite its repeated and careful attention to immigration matters, Congress has declined to authorize damage remedies against individual agents involved in civil immigration enforcement.  ***The institutional silence speaks volumes and counsels strongly against judicial usurpation of the legislative function***.

*Id.* (emphasis added); *see also Maria S*, 912 F.3d at 784 ("The comprehensive federal regulations governing immigration and the removal process weigh against creating a damages remedy in this context."); *Peña Arita v. United States*, No. 7:19-CV-00288, 2020 WL 3542256, at *14 (S.D. Tex. June 30, 2020) (holding that the "thorough and intense" attention to legislation regarding immigration detention indicates that Congress' failure to create a private cause of action was intentional).

43.     The events of this case take place under the same extensive legislative scheme as *De La Paz*.  Though the actions of the agents in that case (stopping and arresting undocumented immigrants) may be somewhat different than the action at issue here, the immigration laws governing agents' actions in the field are the same.  *De La Paz*, 786 F.3d at 377.  The same "repeated" and "careful" attention to immigration legislation that animated that decision and others requires that this Court similarly refrain from extending *Bivens*.

           c.   <u>National security concerns weigh against extending</u> <u>*Bivens*.</u>

44.     The national security implications of incidents at an international border also counsel against extending *Bivens*.

45.     In *Hernandez*, the Supreme Court carefully examined the multiple factors that weighed against extending *Bivens*, including the regulation of federal agents operating on the U.S.-Mexico border.  140 S. Ct. at 746.  The Court observed: "One of the ways in which the Executive protects this county is by attempting to control the movement of people and goods across the border, and that is a daunting task." *Id.* at 746.  Border Patrol agents like the defendant in *Hernandez* – and like Agent Barrera in this case – bear the responsibility to "detect, respond to, and interdict terrorists, drug smugglers and traffickers, human smugglers and traffickers, and other persons who may undermine the security of the United States." *Id.* (quoting 6 U.S.C. § 211(c)(5)).  The agents positioned at the border thus have "a clear and strong connection to national security," implicating the "framework established by the political branches for addressing claims in which it is alleged that lethal force was unlawfully employed by an agent at the border." *Id.*  Finally, the Court concluded: "Since regulating the conduct of agents at the border unquestionably has national security implications, the risk of undermining border security provides reason to hesitate before extending *Bivens* into this field." *Id.* at 747.

46.     The obvious difference between this case and *Hernandez* – that the victim in *Hernandez* was located on the Mexican side of the border, while the Decedent in this case was located just over the border on the U.S. side – is immaterial to this analysis.  The Court in *Hernandez* found that the role played by Border Patrol agents in policing the border itself implicates national security: "The question is not whether national security requires [the shooting of a Mexican national in Mexico]—of course, it does not—but whether the Judiciary should alter the framework established by the political branches for addressing cases in which it is alleged that lethal force was unlawfully employed by an agent at the border."  *Id.* at 746.  The agent in *Hernandez* and Agent Barrera worked the same job and implicate the same framework established by the political branches.  This Court should follow the Supreme Court's clear guidance and refuse to extend *Bivens* to this case.

## IV.    CONCLUSION

47.     For the reasons stated above, Plaintiffs' Third, Fourth, Fifth, and Sixth causes of actions do not state a claim under which relief can be granted and should be dismissed. Agent Barrera further requests all additional relief to which he may be justly entitled.


Dated: September 29, 2020

Respectfully submitted,

**DAVIS & SANTOS, P.C.**


By: _____
    Jason M. Davis
    **Attorney-In-Charge**
    Texas State Bar No. 00793592
    Southern District No. 20114
    Email: jdavis@dslawpc.com

H. Jay Hulings
Texas State Bar No. 24104573
Southern District No. 3472684
Email: jhulings@dslawpc.com
719 S. Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5882

***Attorneys for Defendant***
***Romualdo Barrera***


## CERTIFICATE OF SERVICE

I certify that on the 29th day of September 2020, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.  Additionally, a true and correct copy of this document will be sent to counsel of record as follows:

| Mr. Edgar Saldivar | | |
|---|---|---|
| American Civil Liberties Union of Texas | _____ | Overnight Mail |
| 5225 Katy Freeway | _____ | Certified Mail-RRR |
| Suite 350 | _____ | Facsimile |
| Houston, TX 77007 | __X__ | E-mail |
| Tel: (713) 942-8146 | | |
| Fax: (713) 942-8966 | | |
| Email: esaldivar@aclutx.org | _____ | Overnight Mail |
| | _____ | Certified Mail-RRR |
| Mr. Jose Vela, Jr | _____ | Facsimile |
| United States Attorney's Office | __X__ | E-mail |
| 1000 Louisiana | | |
| Ste 2300 | | |
| Houston, TX 77002 | | |
| Tel: (713) 567-9000 | | |
| Fax: (713) 718-3303 | | |
| Email: jose.vela@usdoj.gov | | |

_____
Jason Davis