United States District Court
Southern District of Texas

**ENTERED**

July 19, 2021

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| GILBERTO GOMEZ VICENTE, INDIVIDUALLY AS THE SURVIVING FATHER OF CLAUDIA PATRICIA GOMEZ GONZALEZ AND AS HEIR-AT-LAW TO THE ESTATE OF CLAUDIA PATRICIA GOMEZ GONZALEZ, ET AL., | § § § § § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 5:20-CV-81 |
| UNITED STATES OF AMERICA; ROMUALDO BARRERA, AGENT FOR THE UNITED STATES BORDER PATROL IN HIS INDIVIDUAL CAPACITY; AND DOES 1–20, AGENTS FOR THE UNITED STATES BORDER PATROL, IN THEIR INDIVIDUAL CAPACITIES, | § § § § § § § § § | |
| Defendants. | § | |

### REPORT AND RECOMMENDATION

Before the Court is Defendant Romualdo Barrera's Motion to Dismiss Plaintiffs' *Bivens* Claims. (Dkt. No. 30). Defendant asks that the Court dismiss claims 3, 4, 5, and 6 of the complaint, (Dkt. No. 1). For the reasons discussed below, this Court recommends that the District Judge GRANT the motion.

### I. Background

The complaint states that on May 23, 2018, Claudia Patricia Gomez Gonzalez ("Claudia") and a group of others were traveling along a road in Rio Bravo, Texas, a small town on the border of the Rio Grande River. (Dkt. No. 1 at 5). The group of travelers, including Claudia, then came into contact with a U.S. Border Patrol Agent. (*Id.* at 5). Plaintiffs believe this to be Defendant Romualdo Barrera ("Barrera"); if incorrect, Plaintiffs believe that the agent was one of Defendant Does 1–20. (*Id.*). The group was located in the corner of a private, residential, fenced-in lot with overgrown weeds and

brush when they came into contact with Defendant Barrera. (*Id.*).

Upon coming into contact with Defendant Barrera, two members of the group ran toward the river. (*Id.*). Two other members ran to hide in an abandoned mobile home nearby. (*Id.*). Claudia and another person stayed in the vacant lot. (*Id.*).

As the group dispersed, Defendant Barrera drew his gun. (*Id.*). When Claudia took a step, Defendant Barrera shot her in the head. (*Id.*). Claudia fell to the ground, landing face down. (*Id.*). Defendant Barrera then chased the two people who had hidden in the abandoned mobile home. (*Id.*). Other Border Patrol agents soon arrived at the scene. (*Id.*).

A local resident heard the gunshot and began to record the incident on video. (*Id.*). When the video begins, another Border Patrol agent is standing over Claudia's body. (*Id.*). The agent turned over Claudia's body, showing that Claudia had not died yet. (*Id.*). The video showed that Claudia continued to breathe and did not die for several minutes. (*Id.*). The local resident who videotaped the event did not witness anything indicating that Claudia may have posed a threat to Border Patrol agents. (*Id.*).

After the shooting, United States Customs and Border Protection ("CBP") issued a press release stating that Claudia and her companions had attacked Defendant Barrera with blunt objects. (*Id.*). CBP later retracted their original statement and issued a second statement that did not refer to blunt objects or allege that Claudia had assaulted Defendant Barrera. (*Id.*). Plaintiffs allege that CBP retracted its initial statement after concluding that Defendant Barrera's claims that Claudia assaulted him were not credible. (*Id.*). Since then, the FBI has opened a criminal investigation against Agent Barrera. (*See, e.g.,* Dkt. No. 45).

Plaintiffs also filed the instant complaint in federal court. Plaintiffs' complaint sets forth eight causes of action. The third, fourth, fifth, and sixth claims are *Bivens* claims against Defendant Barrera and Defendant Does 1–20. (Dkt. No. 1 at 9–13). These are the only claims challenged in the motion to dismiss.

## II. Legal Standard

Defendant moves for partial dismissal of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 30 at 4). In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether a plaintiff has stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, courts

are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). This does not require detailed factual allegations but does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court must "accept as true all well-pleaded facts." *Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 417 (5th Cir. 2010). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

A claim raised under § 1983 cannot stand if it is not predicated on a violation of federal or constitutional law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In § 1983 cases against a public official, the plaintiff must meet a heightened pleading standard. *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996). That heightened standard requires that a complaint "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). By contrast, the heightened pleading standard does not apply in § 1983 claims against a municipality because "municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (5th Cir. 1993).

### III. Discussion

*Bivens* actions allow a plaintiff to sue for damages when federal agents have

3 / 10

violated the plaintiff's constitutional rights. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396–97 (1971). However, the U.S. Constitution does not explicitly provide for this relief. *Id.* Rather, the Supreme Court held in *Bivens* that the Constitution creates an implied cause of action because, without the ability to enforce their rights, the Constitution does not amount to more than words on a page. *Id.*

More recently in *Ziglar v. Abbasi*, the Supreme Court reviewed its decision in *Bivens* with a fresh concern for separation-of-powers principles. 137 S. Ct. 1843, 1857 (2017). Noting a swing in the judicial weathervane, the Court stated that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* (citing *Iqbal*, 556 U.S. at 675). The Court explained that expanding *Bivens* may improperly encroach on Congress's authority to craft statutes that were better suited to enforcing constitutional rights. *Id.* at 1857–58 ("It is not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation."). The Court's analysis focused on one question: who is better equipped to determine whether the Constitution provides a damages remedy in a particular situation—Congress, or the courts? *Id.* at 1857 (citing *Bush v. Lucas*, 462 U.S. 367, 380 (1983)).

The Court's analysis ultimately yielded a two-step approach for determining whether a *Bivens* claim may proceed. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). First, courts must determine whether the *Bivens* claim at issue arises in a new context or whether the claim proceeds in the same context as one of the Supreme Court's previously blessed *Bivens* cases. *Id.* (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). If the case proceeds in the same context as a previous *Bivens* claim, the court's inquiry is complete, and the claim survives the motion to dismiss. *See id.* However, if the case arises in a different context from the previous claims, the court must then determine whether special factors counsel the court against considering this new kind of *Bivens* claim without express congressional approval. *Mesa*, 140 S. Ct. at 743 (citing *Abbasi*, 137 S. Ct. at 1857). If the answer is yes, the court must dismiss the claim. *Id.*

### A. New Context
To determine whether a case provides a new *Bivens* context, the Court must

evaluate whether the case is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court. *Abbasi*, 137 S. Ct. at 1859. The Supreme Court has explained that

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

The Supreme Court has only allowed *Bivens* claims to proceed in three other cases: *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) (approving a Fourth Amendment claim against federal agents for raiding the defendant's home without a warrant); *Davis v. Passman*, 442 U.S. 228 (1979) (approving a Fifth Amendment Due Process Clause claim against a congressman for gender discrimination); and *Carlson v. Green*, 446 U.S. 14 (1980) (approving an Eighth Amendment claim against federal prison officials for failing to provide medical treatment). "Virtually everything else is a new context." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020).

Although a claim should be brought under one or more of the same amendments in the sanctioned cases, a claim nonetheless "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Mesa*, 140 S. Ct. at 743 (comparing *Carlson*, 446 U.S. at 16–18 with *Malesko*, 534 U.S. at 71–74). Put simply, the case at hand must mirror all the same meaningful facts in any one of the previous three cases in order to survive a motion to dismiss. "It is not enough even if a plaintiff asserts a violation of the same clause of the same amendment *in the same way*." *Oliva*, 973 F.3d at 442 (emphasis in original) (citing *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)).

Defendant's motion to dismiss attacks only four of the claims in the complaint. (Dkt. No. 30 at 5). Two of those claims—claims 3 and 4—are brought under the Fourth Amendment. (Dkt. No. 1 at 9–10). *Bivens* is the only Fourth Amendment case that the

Supreme Court has allowed to proceed under an implied-cause-of-action theory. Therefore, claims 3 and 4 cannot survive the motion to dismiss if this case differs in any meaningful way from *Bivens*. *See Abassi*, 137 S. Ct. at 1859.

The last two claims that Defendant's motion attacks are claims 5 and 6. (Dkt. No. 30 at 5). Those two claims are brought under the Fifth Amendment. (Dkt. No. 1 at 12–13). *Davis* is the only Fifth Amendment case that the Supreme Court has allowed to proceed under an implied-cause-of-action theory. Therefore, claims 5 and 6 cannot survive the motion to dismiss if this case differs in a meaningful way from *Davis*. *See Abassi*, 137 S. Ct. at 1859.

In *Mesa*, a Border Patrol agent standing on U.S. soil shot across the U.S.-Mexico border, killing a Mexican teenager standing on Mexican soil. 140 S. Ct. at 740. The teenager's parents sued for damages under *Bivens*, arguing that the agent had violated their son's Fourth and Fifth Amendment rights. *Id.* In reviewing that case, the Supreme Court concluded that all of Plaintiffs' claims arose in a new context than that of *Bivens* or *Davis*. Specifically, the Court stated that

> once we look beyond the constitutional provisions invoked in *Bivens*, *Davis*, and the present case, it is glaringly obvious that petitioners' claims involve a new context, i.e., one that is meaningfully different. *Bivens* concerned an allegedly unconstitutional arrest and search carried out in New York City, 403 U.S. at 389; *Davis* concerned alleged sex discrimination on Capitol Hill, 442 U.S. at 230. There is a world of difference between those claims and petitioners' cross-border shooting claims, where "the risk of disruptive intrusion by the Judiciary into the functioning of other branches" is significant. *Abbasi*, 582 U.S., at ___, 137 S. Ct. 1843.

140 S. Ct. at 743–44.

Unlike *Mesa*, Plaintiffs' pleading asserts that Defendant Barrera shot Claudia near the border rather than across the border. Nonetheless, the shooting arose precisely because Defendant Barrera was charged with securing the border against illegal activity: a fundamentally different context from a warrantless police search in New York City, or a gender-discrimination case on Capitol Hill. Indeed, the Fifth Circuit has noted that "the Supreme Court's recent ruling in *Hernandez v. Mesa* strongly suggests that proximity to the border alone is sufficient to qualify as a 'new context' in which *Bivens* is unavailable." *Angulo v. Brown*, 978 F.3d 942, 948 n.3 (5th Cir. 2020) (assuming *arguendo* that *Mesa*

does not preclude *Bivens* suits that take place near the border in order to resolve the separate question of qualified immunity presented on appeal).

Moreover, other meaningful facts place Plaintiffs' claim in a new context from that of *Bivens* and *Davis*. Defendant Barrera was not only of a different rank from the narcotics officers in *Bivens*; he was of an entirely different division of federal enforcement. In fact, Customs and Border Protection is not part of the same federal agency as federal drug enforcement.[1] This means that Defendant Barrera was not operating under the same legal mandates as the narcotics officers in *Bivens*. Furthermore, the officers in *Bivens* were accused of both illegally searching the plaintiff's home without a warrant and of using excessive force when doing so. In the present case, Defendant Barrera seized Claudia on a public street and did not require a warrant. On cursory review, Defendant Barrera's seizure of Claudia appears to have been properly executed; his conduct after the seizure is what gives rise to the claims at issue. "When a claim involves different conduct by different officers from different agencies, courts are hesitant to extend *Bivens* to a new Fourth Amendment context." *Evans v. U.S. Border Patrol Agents*, Civ. No. 7:19-cv-00358, 2020 WL 9066054, at \*8 (S.D. Tex. July 20, 2020) (citing *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019)).

It is also apparent that the claims in this case are fundamentally different from the claims in *Davis*. *Davis* involved a Fifth Amendment gender discrimination claim in an employment context. The instant case presents no gender discrimination claim and no employment context. While the claims in this case are raised against members of the United States Border Patrol—which fall under the Department of Homeland Security and therefore under the Executive Branch—the claims in *Davis* were levied against a U.S. Congressman. The claims are not against two different members of different agencies; they are levied against different members of entirely different branches of government. Put differently, the same meaningful facts that diverged from *Bivens* also diverge from *Davis*.

---

[1] Federal drug enforcement agents (also known as DEA agents) fall under the umbrella of the United States Department of Justice. By contrast, U.S. Customs and Border Protection is overseen by the United States Department of Homeland Security. Each parent agency has its own independent mandate from Congress, which in turn manifests in the management of subsidiary law enforcement units.

The Court concludes that this case presents a new context and proceeds to the second *Bivens* step.

### B. Special Factors

Having found that this case arises in a different context from previous *Bivens* claims, the Court must next determine whether special factors counsel the Court against extending *Bivens* to these new claims without express congressional approval. *Mesa*, 140 S. Ct. at 743 (citing *Abbasi*, 137 S. Ct. at 1857). In *Abassi*, the Supreme Court concluded that Congress is generally in a better position to determine whether the public interest would be served by imposing a new substantive legal liability. *Abassi*, 137 S. Ct. at 1857 (citing *Schweiker v. Chilicky*, 487 U. S. 412, 426–27 (1988)). This is because "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Id.* at 1858. In recognition of these principles, the Court concluded that a *Bivens* claim cannot be entertained if there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1857 (citing *Carlson*, 446 U.S. at 18). Put differently, a *Bivens* case cannot survive if there are some special factors that give the Court some pause before concluding that the Court is better equipped to provide a damages remedy than Congress. *Id.* at 1857–58. The courts must have unequivocal confidence in their superior expertise compared to that of Congress. *See id.*

The *Abassi* Court provided several helpful examples of what a special factor might look like. For example, "Sometimes there will be doubt because the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." *Id.* at 1858 (internal citations omitted). Alternatively, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* Notably, "the alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would." *Oliva*, 973 F.3d at 444 (citing *Minneci v. Pollard*, 565 U.S. 118, 129 (2012)). "A special factor is a sound reason to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020) (citing *Abassi*, 137 S. Ct. at 1858).

In *Mesa*, the Supreme Court stated that "Since regulating the conduct of agents at the border unquestionably has national security implications, the risk of undermining border security provides reason to hesitate before extending *Bivens* into this field." *Mesa*, 140 S. Ct. at 747. The Supreme Court also pointed to an alternative remedial structure that was available to defendants in that case—the Federal Tort Claims Act (FTCA). *Id.* at 748. The FTCA is considered "the exclusive remedy for most claims against Government employees arising out of their official conduct." *Hui v. Castaneda*, 559 U. S. 799, 806 (2010). As noted in *Mesa*, the FTCA also permits claims brought for a violation of the U.S. Constitution. *Mesa*, 140 S. Ct. at 747 n.9 (citing 28 U.S.C. § 2679(b)(a)(A)). Based on the foregoing, the Court finds that there are special factors present in this case which counsel hesitation for extending *Bivens* to a new context. Because *Bivens* should not be extended to the facts of this case, Plaintiffs have failed "to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6).

## IV. Conclusion

The Court **RECOMMENDS** that the District Judge **GRANT** Defendant Romualdo Barrera's Motion to Dismiss Plaintiffs' *Bivens* Claims. (Dkt. No. 30). The Court **RECOMMENDS** that the District Judge **DISMISS** claims 3, 4, 5, and 6 of Plaintiffs' Complaint, (Dkt. No. 1), and that only claims 1, 2, 7, and 8 remain pending before the Court.

## V. Notice of Right to Object

Within fourteen days after being served with a copy of this Report and Recommendation, the parties may file written objections to the findings and recommendations proposed above. 28 U.S.C. § 636(b)(1). The District Judge will review *de novo* those portions of the report or specified proposed findings or recommendations to which the party objects. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by this Court, and may also receive further evidence or recommit the matter to this Court with instructions. *Id.* The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If a party does not object within fourteen days, the party forfeits its right to District Court review. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file written

objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

       **SIGNED** on July 19, 2021.

John A. Kazen
United States Magistrate Judge