**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| GILBERTO GOMEZ VICENTE, individually as the surviving father of Claudia Patricia Gomez Gonzalez and as heir-at-law to the Estate of Claudia Patricia Gomez Gonzalez; LIDIA GONZALEZ VAZQUEZ, individually as the surviving mother of Claudia Patricia Gomez Gonzalez and as heir-at-law to the Estate of Claudia Patricia Gomez Gonzalez; and RICARDO DE ANDA, in his capacity as Administrator of the Estate of Claudia Patricia Gomez Gonzalez, | § § § § § § § § § § § § | |
| | § | Case No. 5:20-cv-00081 |
| Plaintiffs, | § § § | **PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| v. | § § | |
| UNITED STATES OF AMERICA; ROMUALDO BARRERA, Agent, United States Border Patrol, in his individual capacity; and DOES 1-20, Agents, United States Border Patrol, in their individual capacities. | § § § § § § § | |
| Defendants. | § § | |

## TABLE OF CONTENTS

INTRODUCTION.........................................................................................................1

BACKGROUND AND PROCEDURAL HISTORY .............................................3

STANDARD OF REVIEW ........................................................................................4

ARGUMENT ...............................................................................................................5

      I.     Because Plaintiffs Allege "Garden Variety Excessive Force" Claims, This
Action Does Not Arise in a New Context.............................................. 5

           A.    This Is a "Garden Variety Excessive Force Case."..................................... 6

           B.    The R&R Analytically Errs in Finding a New *Bivens* Context. ................. 9

      II.    Even Were the Court to Conclude This Case Presents a New Context,
"Special Factors" Do Not Counsel Against a *Bivens* Remedy. ........................... 12

           A.    No Alternative Remedial Structure Counsels Against a *Bivens*
Remedy. ............................................................................................... 13

           B.    No Other Special Factors Counsel Against Extending Bivens Here. ....... 14

      CONCLUSION .....................................................................................................16

i

# **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971)......................................................................................... *passim*

*Brunoehler v. Tarwater*,
    743 F. App'x 740 (9th Cir. 2018) ............................................................................7

*Carlson v. Green*,
    446 U.S. 14 (1980)......................................................................................2, 5, 12, 13

*Castellanos v. United States*,
    438 F. Supp. 3d 1120 (S.D. Cal. 2020)..............................................................7, 10

*Chavez v. United States*,
    683 F.3d 1102 (9th Cir. 2012) ................................................................................7

*Davis v. Passman*,
    442 U.S. 228 (1979)........................................................................................5, 9, 10

*De La Paz v. Coy*,
    786 F.3d 367 (5th Cir. 2015) ................................................................................14

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020) (Ginsburg, J., dissenting)............................................ *passim*

*Hernandez v. Mesa*,
    885 F.3d 811 (5th Cir. 2018) (en banc), *cert. granted in part*, 139 S. Ct. 2636 .............*passim*

*Jacobs v. Alam*,
    915 F.3d 1028 (6th Cir. 2019) ........................................................................7, 9, 11

*Lopez-Flores v. Ibarra*,
    2018 WL 6579180 (S.D. Tex. Jan. 22, 2018) ........................................................8

*Lynch v. Cannatella*,
    810 F.2d 1363 (5th Cir. 1987) ................................................................................8

*Martinez-Aguero v. Gonzalez*,
    459 F.3d 618 (5th Cir. 2006) ...........................................................................7, 10

*Minneci v. Pollard*,
    565 U.S. 118 (2012)...............................................................................................13

*Pelayo v. U.S. Border Patrol Agent No. 1*,
    82 F. App'x 986 (5th Cir. 2003) ......................................................................8

*Prado v. Perez*,
    451 F. Supp. 3d 306 (S.D.N.Y. Apr. 3, 2020) ...................................8, 13

*Sanchez v. Rowe*,
    651 F. Supp. 571 (N.D. Tex. 1986) ...........................................................7, 8

*Stokes v. Gann*,
    498 F.3d 483 (5th Cir. 2007) .................................................................4, 11

*Tennessee v. Garner*,
    471 U.S. 1 (1985) ....................................................................................12

*United States v. Perkins*,
    177 F. Supp. 2d 570 (W.D. Tex. 2001) ...................................................11

*Wilkie* v. *Robbins*,
    551 U.S. 537 (2007) ................................................................................13

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 ............................................................................... *passim*

**Statutes**

21 U.S.C. § 878 ..................................................................................................11

28 U.S.C. § 636(b)(1) ..................................................................................1, 4, 5

**Other Authorities**

Early Republic, 85 N.Y.U. L. Rev. 1862, 1871-72 (2010) ..................................5

Federal Rule of Civil Procedure 72(b)(3) ....................................................4, 5

Federal Rule of Civil Procedure 72(b)(2) ........................................................1

## INTRODUCTION

Three years ago, United States Border Patrol Agent Romualdo Barrera shot and killed Claudia Patricia Gomez Gonzalez ("Claudia"), an unarmed and petite twenty-year-old woman, in a fenced-in residential lot in a small town in south Texas. Defendant Barrera's killing of Claudia lacked any justifiable basis.

Plaintiffs Gilberto Gomez Vicente and Lidia Gonzalez Vasquez—Claudia's parents—and the administrator of Claudia's estate (collectively, "Plaintiffs") have brought this lawsuit to hold both Agent Barrera and the United States accountable. The United States has not moved for dismissal, but Agent Barrera has sought dismissal of the constitutional claims against him.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), Plaintiffs respectfully object to the Report and Recommendation ("R&R") issued by the Magistrate Judge in this litigation on July 19, 2021. *See* Dkt. 50. The R&R errs in concluding that Plaintiffs lack any remedy against Defendant Barrera under the Constitution. A constitutional damages remedy in this sort of "garden variety excessive force case against a federal law enforcement officer" is well established. *Hernandez v. Mesa*, 885 F.3d 811, 814 (5th Cir. 2018) (en banc), *cert. granted in part*, 139 S. Ct. 2636, *and aff'd*, 140 S. Ct. 735 (2020). Defendant Barrera shot and killed Claudia, who had no weapon and posed no threat to him or anyone else, in a fenced-in residential lot in a neighborhood in a small town in the United States. Plaintiffs' claims are grounded in well-established constitutional law under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). That case, too, involved an excessive force claim against a federal law enforcement officer. There is nothing about Defendant Barrera's status as a Border Patrol agent, or any other aspect of this case, that differentiates these actions or this case for constitutional purposes. The Fifth Circuit has long

1

recognized, and most recently reaffirmed in 2018, the availability of "*Bivens* actions against immigration officers who deploy unconstitutionally excessive force when detaining immigrants on American soil." *Hernandez*, 885 F.3d at 819 n.14 (quoting *De La Paz v. Coy*, 786 F.3d 367, 374 (5th Cir. 2015)). This is, in short, a conventional *Bivens* case.

Moreover, even if this Court were to conclude that this case did present a "new context" for *Bivens* purposes, a *Bivens* remedy would still be available. The Supreme Court has long held that the United States' limited waiver of its sovereign immunity to allow certain claims for compensatory damages under the Federal Torts Claim Act, for example, is not an adequate substitute for constitutional claims against individual officers, and that remains controlling precedent. *Carlson v. Green*, 446 U.S. 14 (1980). Nor does any other special factor counsel hesitation in this wholly domestic shooting. A federal law enforcement officer used excessive force against a defenseless person standing in a residential lot in an American small town. This is precisely the type of conventional official abuse for which the *Bivens* doctrine has provided a remedy since its inception.

Among other things, the Magistrate Judge's R&R also errs in several critical ways that must be addressed by this Court:

(1) A long line of decisions, including controlling precedent from the Supreme Court and Fifth Circuit, allows for *Bivens* actions for excessive uses of force on U.S. soil. These cases have been undisturbed by any subsequent case law, including *Hernandez*.

(2) The Magistrate Judge incorrectly determined that the seizure at issue here occurred prior to Defendant Barrera's shooting of Claudia. The basis for Plaintiffs' claims is Defendant Barrera's unlawful seizure of Claudia by shooting her dead without justification.

(3) Neither Defendant Barrera's powers nor his rank distinguish him from the line-level narcotics officers in *Bivens*. Border Patrol agents are in fact cross-designated with drug enforcement powers, and Defendant Barrera was a line-level agent when he shot Claudia.

(4) Under controlling Supreme Court precedent, the Federal Tort Claims Act is a complementary remedial scheme and does not displace the availability of *Bivens* claims, even in a new *Bivens* context.

Plaintiffs therefore respectfully ask this Court to reject the R&R and allow the *Bivens* claims against Defendant Barrera to proceed.

## BACKGROUND AND PROCEDURAL HISTORY

Defendant Barrera killed Claudia on May 23, 2018, in a residential area in the Texas town of Rio Bravo. Compl. ¶¶ 22-24. Rio Bravo is a quiet, safe community. *Id.* ¶¶ 17-18. Claudia was walking with a small group along Centeno Lane that day, roughly a third of a mile from the Rio Grande. *Id.* ¶ 20. She did not have any visible object with her at all, much less anything that could be perceived as a weapon. *Id.* ¶ 21.

Defendant Barrera came into contact with Claudia and the others in the group in the corner of a fenced-in residential lot. *Id.* ¶ 22. Claudia and one other person remained in the lot. *Id.* ¶ 23. Defendant Barrera drew his gun, aimed his weapon at Claudia, pulled the trigger, and shot her in the head. *Id.* ¶ 24. Claudia then fell to the ground, face-down. *Id.*

After Defendant Barrera shot Claudia in the head, she clung to life for at least several minutes. *Id.* ¶ 25. Other Border Patrol agents then arrived, and another Border Patrol agent tried to turn her over. *Id.* ¶¶ 24-25. As Claudia lay on the ground, she opened her mouth and gasped

3

for air; blood was visible on one side of her face. *Id.* ¶ 25. She then died from the gunshot wound inflicted by Defendant Barrera. *Id.*

Plaintiffs have now brought, among other claims, *Bivens* claims under the Fourth and Fifth Amendments to the United States Constitution against Defendant Barrera for his use of excessive force in killing Claudia. *Id.* ¶¶ 45-83. Plaintiffs have alleged, in their third and fourth causes of action, that Defendant Barrera's excessive and unreasonable use of force in shooting Claudia—in other words, in his seizure of Claudia—violated the Fourth Amendment. *Id.* ¶¶ 45-63. In their fifth and sixth causes of action, they have alleged that, in depriving Claudia of her life without due process of law in actions that shock the conscience, Defendant Barrera's actions violated the Fifth Amendment. *Id.* ¶¶ 64-83.

Defendant Barrera moved to dismiss Plaintiffs' *Bivens* claims. Doc. 30 at 4. In July 2021, the Magistrate Judge recommended that this Court grant Defendant's Motion to Dismiss Plaintiffs' *Biven* Claims, Doc. 30, and accordingly dismiss Plaintiffs' third, fourth, fifth, and sixth claims in their complaint. Doc. 50 at 9.

## STANDARD OF REVIEW

On a motion to dismiss, courts must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff[s]." *Stokes v. Gann,* 498 F.3d 483, 484 (5th Cir. 2007).

In resolving objections to a magistrate judge's recommended disposition, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Options include complete or partial rejection, acceptance, or modification of the magistrate judge's findings and recommendations, as well as return of the

4

matter to the magistrate judge with further instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## ARGUMENT

It is well established that suits against federal officers for damages can be an avenue for relief for violations of constitutional rights, through *Bivens* claims. *See generally Bivens*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). Taking the allegations in the complaint as true—as this Court must do at this stage—Defendant Barrera inexcusably and unconstitutionally shot Claudia. This sort of classic invasion of constitutional protection against excessive force has long given rise to liability in damages against individual government officers. Indeed, "[h]istorically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." *Bivens*, 403 U.S. at 395.[1]

This is precisely the prototypical "garden variety excessive force case against a federal law enforcement officer" in which a constitutional damages remedy is—and has long been— available. *Hernandez*, 885 F.3d at 814. The R&R's conclusion to the contrary was error, and this Court should accordingly hold that Plaintiffs' *Bivens* claims may proceed.

## I.      Because Plaintiffs Allege "Garden Variety Excessive Force" Claims, This Action Does Not Arise in a New Context.

The Report and Recommendation errs in concluding that Plaintiffs' *Bivens* claims arise in a "new context" for *Bivens* purposes. Rather, as set forth in Plaintiffs' Opposition to Defendant's

---

[1] Individual damages suits against government officers for unlawful intrusions on liberty or property— including unlawful seizures—were familiar at the time of the Framing. James E. Pfander & Jonathan L. Hunt, *Public Wrongs and Private Bills: Indemnification and Government Accountability in the Early Republic*, 85 N.Y.U. L. Rev. 1862, 1871-72 (2010). In the early 1800s, the Supreme Court repeatedly upheld federal officers' individual liability for damages due to unlawful conduct. *E.g.*, *Little v. Barreme*, 6 U.S. 170, 170 (1804) (upholding judgment against federal officer for unlawful seizure and explaining that an officer following unlawful instructions "is answerable in damages to any person injured by their execution").

Motion to Dismiss Plaintiffs' *Bivens* Claims, Plaintiffs' claims seeking damages for unconstitutionally excessive force by a law enforcement officer fall within the core of *Bivens*. Doc. 38 at 5-14. Contrary to the R&R's conclusion, these unreasonable seizure and excessive force claims flow directly from precedent. *Id.*

**A.  This Is a "Garden Variety Excessive Force Case."**

The Supreme Court's recent *Bivens* jurisprudence does not "cast doubt on the continued force" or "necessity" of the availability of *Bivens* relief "in the search-and-seizure context in which it arose." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856. Rather, *Bivens* "provides instruction and guidance to federal law enforcement officers going forward." *Id.* at 1856-57. The Supreme Court has specifically underscored *Bivens*' continued vitality in this context, explaining that "[t]he settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere." *Id.* at 1857. Such "individual instances of . . . law enforcement overreach . . . due to their very nature are difficult to address except by way of damages actions after the fact." *Id.* at 1862. *Bivens* itself recognized a damages remedy under the Fourth Amendment for an officer's use of "unreasonable force." *Bivens*, 403 U.S. at 389; *see also Hernandez v. Mesa*, 140 S. Ct. 735, 754 (2020) (Ginsburg, J., dissenting) (describing the claims at issue in *Bivens*).

For a claim to arise in a "new context," it must be "meaningful[ly]" different from prior *Bivens* cases. *See Abbasi*, 137 S. Ct. at 1859. While the Supreme Court has not defined precisely when this threshold is crossed, *compare Hernandez*, 140 S. Ct. at 743-44 (majority opinion) (declining to offer specific factors for new context analysis), *with Abbasi*, 137 S. Ct. at 1859-60 (suggesting factors to guide new context analysis), it has made clear the touchstone of a

"meaningful" difference is "the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Hernandez*, 140 S. Ct. at 743-44 (quoting *Abbasi*, 137 S. Ct. at 1860). Insignificant differences "will not suffice." *Abbasi*, 137 S. Ct. at 1865. All claims contain differences; not all differences are meaningful. *See Jacobs v. Alam*, 915 F.3d 1028, 1038 (6th Cir. 2019) (holding that "claims against three individual officers for their alleged overreach in effectuating a standard law enforcement operation," including via excessive force, were not *meaningfully* different from *Bivens*); *Brunoehler v. Tarwater*, 743 F. App'x 740, 744 (9th Cir. 2018) (explaining that *Abbasi* "does not require . . . perfect factual symmetry"); *Castellanos v. United States*, 438 F. Supp. 3d 1120, 1129 (S.D. Cal. 2020) (asking if claims involving excessive force at port of entry "*fundamentally* differ" from prior *Bivens* cases).

Indeed, for decades, courts inside and outside the Fifth Circuit have recognized excessive-force *Bivens* claims against Border Patrol agents in the United States. In *Martinez-Aguero v. Gonzalez*, 459 F.3d 618 (5th Cir. 2006), the Fifth Circuit permitted a noncitizen's *Bivens* claim against a Border Patrol agent for unlawful arrest and excessive force to proceed, where the agent's conduct occurred outside the port of entry (prior to entry) though on United States soil. *Id.* at 620-21, 625 (stating that the plaintiff "may bring a *Bivens* claim for unlawful arrest and the excessive use of force under the Fourth Amendment"). Following on *Bivens*, numerous other decisions, including in the Fifth Circuit, have sustained similar damages actions against Border Patrol agents under the Fourth Amendment. *See, e.g.*, *Chavez v. United States*, 683 F.3d 1102, 1111-12 (9th Cir. 2012) (permitting claim against Border Patrol agent for unlawful traffic stops); *Castellanos v. United States*, 438 F. Supp. 3d 1120, 1123-24, 1126, 1130-31 (S.D. Cal. 2020) (permitting claims of excessive force and false arrest against CBP officers stemming from events at Calexico Port of Entry); *Sanchez v. Rowe*, 651 F. Supp. 571, 574 (N.D.

Tex. 1986) (holding that Border Patrol agent was liable under *Bivens* for use of excessive force against noncitizen in violation of the Fourth and Fifth Amendments); *see also Lopez-Flores v. Ibarra*, 2018 WL 6579180 at *8 (S.D. Tex. Jan. 22, 2018) (observing that "the Fifth Circuit has permitted a *Bivens* Fourth Amendment cause of action to proceed against immigration officers" in cases alleging excessive force and determining that the plaintiff's Fourth Amendment claim against Border Patrol agents presented a new context because "Plaintiff's complaint does not allege excessive force"); *Prado v. Perez*, 451 F. Supp. 3d 306 (S.D.N.Y. Apr. 3, 2020) (fact that claim against Immigrations and Customs Enforcement officers under the Fourth Amendment concerned the same constitutional violation as in *Bivens* "weigh[ed] heavily" in court's finding that claim did not present new context).

Along these lines, in the Fifth Amendment context, this Circuit has impliedly recognized the availability of a *Bivens* claim by noncitizens against federal officials for "gross physical abuse" in violation of due process. *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70, 1374 (5th Cir. 1987); *Sanchez*, 651 F. Supp. at 574 (holding that Border Patrol agent was liable under *Bivens* for use of excessive force against noncitizen in violation of the Fifth Amendment); *cf. Pelayo v. U.S. Border Patrol Agent No. 1*, 82 F. App'x 986, 988 (5th Cir. 2003) (permitting due process claim against Border Patrol agent for wrongful deportation to proceed).

This case is not meaningfully distinct from *Bivens* itself, which recognized a damages remedy for a seizure involving an officer's use of "unreasonable force." *Bivens*, 403 U.S. at 389. This kind of "garden variety excessive force case against a federal law enforcement officer" is the type of law enforcement action that was at issue in *Bivens* and against which *Bivens* protects. *Hernandez*, 885 F.3d at 814; *see also Abbasi*, 137 S. Ct. at 1857. Following *Abbasi* and *Hernandez*, "run-of-the-mill challenges to standard law enforcement operations"—like this

one—are "well within *Bivens*." *Jacobs*, 915 F.3d at 1038. An unreasonable use of force by a line-level law enforcement officer is exactly what *Bivens* has remedied and was designed to remedy since its inception.

**B.   The R&R Analytically Errs in Finding a New *Bivens* Context.**

This is not a new *Bivens* context. Each of the R&R's bases for finding this case "meaningful[ly]" different from *Bivens* is erroneous. **First,** as a threshold matter, the R&R errs in separating out the Fourth and Fifth Amendment *Bivens* analyses. This approach is inconsistent with *Hernandez*. The *Hernandez* plaintiffs brought claims under the Fourth and Fifth Amendments stemming from a fatal shooting. 140 S. Ct. at 740. The Supreme Court analyzed the availability of "[t]he *Bivens* claims" together, making no distinction between them for purposes of *Bivens* analysis. *Id.* at 743. It did not, in other words, suggest that if the Fourth Amendment claim had been able to go forward based on the context of the "cross-border shooting" that the Fifth Amendment claim could only have gone forward had it matched the facts of *Davis v. Passman*, 442 U.S. 228 (1979). *Hernandez* determined that the "claims involve[d] *a*"—singular—"new context." 140 S. Ct. at 743.

**Second,** the R&R errs in characterizing Defendant Barrera's unreasonable seizure of Claudia as meaningfully distinct from *Bivens* because it "arose . . . because Defendant Barrera was charged with securing the border against illegal activity." Doc. 50 at 6. But this overlooks that *Hernandez*'s reasoning hinged on the fact that it was a *cross*-border shooting by an agent located "right at the border." *Hernandez*, 140 S. Ct. at 746. The agent in *Hernandez* was not patrolling a neighborhood within the United States, nor did he engage in excessive force wholly within the United States. Rather, the agent was on the United States side of a concrete culvert through which the border runs. The cross-border nature of the shooting made it "by definition an

9

international incident" "affect[ing] both countries' interests" and with the potential to lead to an international dispute. *Id.* at 744. *Hernandez* did not indicate that *Bivens* is unavailable to seek accountability for excessive force in a residential setting within the United States merely because the agent involved happened to work for Border Patrol or to have a border-security mandate. As described above, for decades courts have recognized these sorts of excessive-force claims against Border Patrol agents—including at or near the border within the United States. *E.g.*, *Martinez-Aguero*, 459 F.3d at 620-21, 625 (claims based on CBP actions at a port of entry); *Castellanos*, 438 F. Supp. 3d at 1130 (same).

The R&R's reliance on *Angulo* in this context for a contrary interpretation is inapt; in its entirety, *Angulo* points at least as strongly to the availability of a *Bivens* remedy in this context. *Angulo* quoted *Hernandez*'s statement about the importance of "regulating the conduct of agents *at* the border" in describing "proximity to the border" as potentially enough for a "new context." 978 F.3d at 948 n.3 (emphasis added). But *Angulo* went on to assume the availability of a *Bivens* remedy. It explained that, as to *Bivens*, "the international implications of a cross-border shooting" were "of vital importance in *Hernandez*." *Id.* By contrast, the use of excessive force in that case by CBP officers in an inspection at a port of entry to the United States was "more similar to standard Fourth Amendment unreasonable seizure cases" in which *Bivens* has applied. *Id.* The logic from *Angulo*, where the law enforcement overreach occurred directly on the international bridge, applies even more sharply here, where Defendant Barrera killed Claudia in a residential neighborhood in an American town a third of a mile from the border.[2]

---

[2] The magistrate judge notes that the events in *Bivens* took place "in New York City," while those in *Davis* took place "on Capitol Hill." Doc. 50 at 6. But cases finding *Bivens* available even at a port of entry—not the circumstances here—remain good law.

**Third,** nothing about Defendant Barrera's agency or rank presents a new context. The R&R erroneously describes Customs and Border Protection as "not part of the same agency as federal drug enforcement" and states that as a result "Defendant Barrera was not operating under the same legal mandates as the narcotics officers in *Bivens*." Doc. 50 at 7. But, as Plaintiffs explained in their brief, Border Patrol agents *are* in fact operating under exactly those legal mandates. Doc. 38 at 10 n.4. Pursuant to a Memorandum of Understanding, Border Patrol agents are cross-designated with the powers conferred by 21 U.S.C. § 878 on agents of the Drug Enforcement Administration—the successor to the Federal Bureau of Narcotics. *See* Compl. ¶ 14 n.1; *see also United States v. Perkins*, 177 F. Supp. 2d 570, 576 (W.D. Tex. 2001) (discussing cross-designation). Further, the R&R's statement that Defendant Barrera "was . . . of a different rank from the narcotics officers in *Bivens*," Doc. 50 at 7, is plainly erroneous. This case involves a line-level officer, just like the defendants in *Bivens* itself. *See Jacobs*, 915 F.3d at 1033, 1038 (holding that claims against "individual line officers" in "carrying out their routine . . . duties" did not present a new context for *Bivens* purposes, for officers deputized as Special Deputy U.S. Marshals).

**Fourth,** the R&R errs in distinguishing this case from *Bivens* based on the location and nature of Defendant Barrera's seizure of Claudia—including in describing the seizure as apparently lawful. The R&R states, "Defendant Barrera seized Claudia on a public street and did not require a warrant." Doc. 50 at 7. But the complaint alleges that Defendant Barrera shot Claudia to death in a fenced-in residential lot, *not* on a public street—and the allegations in the complaint must be taken as true at this stage in the litigation. *Stokes*, 498 F.3d at 484.

Troublingly, the R&R determines, "On cursory review, Defendant Barrera's seizure of Claudia appears to have been properly executed; his conduct after the seizure is what gives rise

11

to the claims at issue." Doc. 50 at 7. But this cannot possibly be correct: the complaint alleges that Defendant Barrera unreasonably seized Claudia in violation of the Fourth Amendment by shooting and killing her. Compl. ¶ 47 ("Defendant[] Barrera . . . deprived Claudia of her right to be free from unreasonable seizures by using excessive and unreasonable lethal force against her, in violation of the Fourth Amendment."); *id.* ¶ 57 (same). The shooting itself *was*, Plaintiffs have alleged, the unreasonable seizure. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. . . . A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."). The R&R's conclusion to the contrary, that Defendant Barrera's seizure of Claudia was on its face "properly executed," is a clear misunderstanding of Fourth Amendment law. The use of unjustified and unreasonable deadly force in apprehending Claudia *was* the unlawful seizure. As in *Bivens*, the allegation here is one of seizure using unreasonable force in a residential setting. As in *Bivens*, a constitutional damages remedy is available here. This is a "garden variety excessive force case." *Hernandez*, 885 F.3d at 814.

## II.    Even Were the Court to Conclude This Case Presents a New Context, "Special Factors" Do Not Counsel Against a *Bivens* Remedy.

Even were the Court to conclude that Plaintiffs' claims present a new context, the R&R errs in determining that special factors counsel against a *Bivens* remedy here. *Bivens* embodies the principle that wrongdoers who exercise government power should be accountable for rights violations. "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson*, 446 U.S. at 18. In determining whether special factors exist to overcome this principle, courts must focus on the concrete facts of each case. *See, e.g.*,

*Wilkie* v. *Robbins*, 551 U.S. 537, 555-62 (2007). Here, Plaintiffs have no adequate alternative remedy for Defendant Barrera's unconstitutional killing of Claudia, and no other special factors counsel hesitation.

### A.  No Alternative Remedial Structure Counsels Against a *Bivens* Remedy.

Contrary to the R&R's conclusion, and as Plaintiffs explained in their brief opposing dismissal, the mere existence of a remedy under the Federal Tort Claims Act ("FTCA") does not foreclose a suit under *Bivens*. Doc. 38 at 15-17. The R&R does not engage with Plaintiffs' analysis on this issue, instead merely noting that *Hernandez* "pointed to" the FTCA's availability in holding that special factors counseled hesitation. Doc. 50 at 9. But alternative remedies weigh against the application of *Bivens* only when they are "adequate" to protect the constitutional interests at issue—*i.e.*, when they provide incentives that deter unconstitutional conduct "while also providing roughly similar compensation to victims of violations." *See Minneci v. Pollard*, 565 U.S. 118, 130 (2012).

As Plaintiffs explained, Doc. 38 at 15, the Supreme Court has *explicitly* considered and rejected the contention that an FTCA claim against the United States is an alternative remedy that operates to foreclose a *Bivens* claim against an individual. *Carlson*, 446 U.S. at 19-23. The FTCA, alone or in tandem, cannot displace *Bivens* when it is "crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Carlson*, 446 U.S. at 20; *see also Prado*, 451 F. Supp. 3d at 314, 316 (allowing *Bivens* and FTCA claims arising out of ICE officers' search and seizure to proceed past motion to dismiss).

The Supreme Court's more recent *Bivens* jurisprudence likewise does not hold that the existence of the FTCA or the availability of a claim under the FTCA is a reason not to extend *Bivens*. In fact, in *Abbasi* the Court recognized the existence of the FTCA—and shortly

thereafter explained that the "settled law of *Bivens*" "in the search-and-seizure context" and "the undoubted reliance upon it as a fixed principle in the law" "are powerful reasons to retain it." 137 S. Ct. at 1856-57. *Abbasi* noted that "if there is an alternative remedial structure present *in a certain case*," such a remedial scheme may be a reason not to extend *Bivens*—but it in no way suggested that the existence of the FTCA as a general remedial scheme for federal torts would foreclose the extension of *Bivens*. *Id.* at 1858 (emphasis added) (notably citing specific remedial schemes as examples but *not* the FTCA).

      *Hernandez* is not to the contrary. Rather, in *Hernandez*, the Supreme Court observed that "Congress has repeatedly declined to authorize the award of damages for injury" occurring extraterritorially and cited the FTCA as one example. 140 S. Ct. at 747-48. *Hernandez* did not suggest that the *availability* of the FTCA would also have cut against the availability of *Bivens*— and indeed, that would lead to the absurd result of suggesting that *Bivens* is *never* available in a new context. But the Supreme Court did not intend for the second prong of its analysis to be useless.

### B.  No Other Special Factors Counsel Against Extending Bivens Here.

      Nor does the fact that Agent Barrera shot and killed Claudia in a Texas neighborhood a third of a mile from the border counsel hesitation in providing a *Bivens* remedy here. This is an ordinary, domestic excessive-force case. As the Supreme Court cautioned in *Abbasi*, "national-security concerns must not become a talisman used to ward off inconvenient claims—a 'label' used to 'cover a multitude of sins.'" 137 S. Ct. at 1862 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 523 (1985)). "There are . . . no identifiable national interests that justify the wanton infliction of pain." *De La Paz*, 785 F.3d at 374 (quoting *Martinez-Aguero*, 459 F.3d at 623). National security concerns do not counsel against a *Bivens* remedy for an unjustified deadly

shooting by a law enforcement officer of an unarmed person who posed no threat on a residential lot in an American neighborhood. Such a conclusion would be astonishing, and Supreme Court precedent does not compel it.

The implications of such a holding are staggering. For example, had Defendant Barrera turned and shot dead the nearby neighbor who filmed the scene as Claudia was dying, that resident too would lack *Bivens* recourse for the injury. There is no reason to view Defendant Barrera's killing of Claudia as analytically distinct. The mere fact that the shooter here is a Border Patrol agent cannot categorically shield him from any sort of individual liability for the kinds of "garden variety excessive force case[s] against a federal law enforcement officer" that form the very core of *Bivens*—no matter his conduct. *Hernandez*, 885 F.3d at 814.

Contrary to the R&R's conclusion, *Hernandez* is inapposite on this point. The harm there occurred on foreign soil, and as described above the reasoning depended on the agent's location "right at the border," shooting across. 140 S. Ct. at 746. It cannot be that any broad assertion of national security concerns insulates unlawful conduct by Border Patrol agents across the board—even actions committed against U.S. citizens and residents on U.S. soil. No court has ever upheld such a radical principle.

Defendant Barrera shot Claudia in a residential neighborhood approximately a third of a mile from the border. He was engaged in conventional law-enforcement activity—patrolling the quiet community of Rio Bravo. Nothing about the mere fact of this small town's location in south Texas or Defendant Barrera's status as a Border Patrol agent, rather than a law enforcement officer from a different agency, counsels hesitation in ensuring accountability for an unjustified fatal shooting. Instead, these are precisely the kinds of claims for which *Bivens* exists

15

to provide redress—as "settled law . . . in this common and recurrent sphere of law enforcement." *Abbasi*, 137 S. Ct. at 1857.

## CONCLUSION

This Court should reject the report and recommendation and permit Plaintiffs' *Bivens* claims to proceed.

//

Dated:  August 2, 2021

Respectfully submitted,

Yosef J. Riemer*
Joseph A. Loy
Bar  No. NY4300042
Joseph M. Sanderson*
Giselle Sedano*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
yriemer@kirkland.com
jloy@kirkland.com
joseph.sanderson@kirkland.com
giselle.sedano@kirkland.com

/s/ *Edgar Saldivar*
Edgar Saldivar (Attorney-In-Charge)
Andre Segura
Kathryn Huddleston
ACLU FOUNDATION OF TEXAS, INC.
5225 Katy Fwy., Suite 350
Houston, Texas 77007
(713) 942-8146
esaldivar@aclutx.org
asegura@aclutx.org
khuddleston@aclutx.org

Bernardo Rafael Cruz*
ACLU FOUNDATION OF TEXAS, INC.
109 N. Oregon St., Suite 600
El Paso, TX
(915) 308-7163
brcruz@aclutx.org

Lee Gelernt*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY10004
Phone: (212) 549-2600
Fax: (212) 549-2654
lgelernt@aclu.org

*  *Pro hac vice*

17

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was served upon counsel of record through the Court's electronic filing system on August 2, 2021.

/s/ Edgar Saldivar
Edgar Saldivar

18