**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **GILBERTO GOMEZ VICENTE, et al.,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| **v.** | § | CIVIL ACTION NO. 5:20-cv-00081 |
| | § | |
| **UNITED STATES OF AMERICA;** | § | |
| **ROMUALDO BARRERA, Agent, United** | § | |
| **States Border Patrol, in his individual** | § | |
| **capacity; and DOES 1-20, Agents, United** | § | |
| **States Border Patrol, in their individual** | § | |
| **capacities,** | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANT ROMUALDO BARRERA'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**DAVIS & SANTOS, P.C.**

Jason M. Davis
**Attorney-In-Charge**
Texas State Bar No. 00793592
Southern District No. 20114
Email: jdavis@dslawpc.com
Stephanie L. Dodge
Texas State Bar No. 24105336
Southern District No. 3599198
Email: sdodge@dslawpc.com
719 S. Flores Street
San Antonio, Texas 78204
(210) 853-5882 (Telephone)
(210) 200-8395 (Facsimile)

*Attorneys for Defendant Romualdo Barrera*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.    INTRODUCTION ............................................................................................... 1

II.    RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY................... 2

    A.   Relevant factual allegations. ...................................................................... 2

    B.   Procedural history. ..................................................................................... 3

III.   ARGUMENT AND AUTHORITIES.......................................................................... 4

    A.   Governing law............................................................................................ 4

    B.   This case presents a new *Bivens* context.............................................. 5

       i.    This case presents several meaningful differences from *Bivens* itself............................ 6

       ii.   Fifth Circuit case law does not create an established *Bivens* claim for this matter. ........ 9

       iii.  The Report and Recommendation did not err in finding a new *Bivens* context. ........... 10

    C.   *Bivens* should not be extended into this new context. ...................................... 13

       i.    Adequate remedies exist to redress any alleged harms absent *Bivens*. ......................... 13

       ii.   Special factors counsel against extending *Bivens* into this context. ............................. 15

IV.  CONCLUSION....................................................................................................... 16

## TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Angulo v. Brown,*
 978 F.3d 942 fn.3 (5th Cir. 2020) ........................................................................ 12

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ............................................................................................... 4

*Bivens v. Six Unknown Named Agents,*
 403 U.S. 388 (1971) .......................................................................................*passim*

*Byrd v. Lamb,*
 990 F.3d 879 (5th Cir. 2021) ........................................................... 10, 11, 12, 13

*Cantú v. Moody,*
 933 F.3d 414 (5th Cir. 2019) ................................................................. 6, 10, 14

*Carlson v. Green,*
 446 U.S. 14 (1980) ............................................................................................ 8, 14

*De La Paz v. Coy,*
 786 F.3d 367 (5th Cir. 2015) ............................................................................ 15, 16

*Hernandez v. Mesa,*
 140 S. Ct. 735 (2020) .................................................................................. 1, 9, 15, 16

*Oliva v. Nivar,*
 973 F.3d 438 (5th Cir. 2020) ............................................................. 6, 8, 10, 14

*Papasan v. Allain,*
 478 U.S. 265 (1986) ............................................................................................... 4

*Payton v. New York,*
 445 U.S. 573 (1980) ............................................................................................... 7

*Smith v. Clark,*
 No. 5:19-CV-00675-JKP, 2020 WL 5820534 (W.D. Tex. Sept. 29, 2020) ............ 14

*United States v. Montoya de Hernandez,*
 473 U.S. 531 (1985) ............................................................................................... 8

*Ziglar v. Abbasi,*
 137 S. Ct. 1843 (2017) ....................................................................................*passim*

**<u>STATUTES</u>**

28 U.S.C. § 636(b)(1) ................................................................................................ 4, 5

**<u>RULES</u>**

Federal Rule of Civil Procedure 8(a) ............................................................................ 4

Federal Rule of Civil Procedure 72(b)(2) ..................................................................... 4

Federal Rule of Civil Procedure 72(b)(3) ..................................................................... 5

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 4

TO THE HONORABLE COURT:

Defendant Romualdo Barrera ("**Agent Barrera**" or "**Defendant**") files this Response to Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation (the "**Response**"), and in support would respectfully show:

## I.   INTRODUCTION

1.      Plaintiffs are clinging to a view of the law that has long-since passed into history.  In his Report and Recommendation, the Magistrate Judge aptly described the "swing in the judicial weathervane" that the Supreme Court emphasized in *Ziglar v. Abbasi* regarding *Bivens* claims.  137 S. Ct. 1843, 1857 (2017).  The Magistrate Judge's Report and Recommendation goes on to correctly find that Plaintiffs have failed to state a claim upon which relief can be granted because *Bivens* should not be extended to the facts of this case.  ECF No. 50 at 9.

2.      In their Objections to the Magistrate Judge's Report and Recommendation (the "**Objections**"), Plaintiffs primarily reiterate their arguments from their Opposition to Defendant's Motion to Dismiss Plaintiffs' *Bivens* Claims.  The Magistrate Judge has already rejected those arguments.

3.      Essentially, Plaintiffs ask this Court to adopt an expansive interpretation of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and its progeny to permit their claims against Agent Barrera to proceed.  That interpretation may be one that some commentators (and perhaps some judges) shared when *Bivens* was first issued, and it may be the view that Plaintiffs wish still existed.  But that interpretation is not the law as it has been defined by the Supreme Court and the Fifth Circuit.

4.      Over nearly a generation of decisions, the Supreme Court has repeatedly restricted the scope of *Bivens*, rejecting case after case that strayed even in the slightest degree from the facts of *Bivens* and the two principal Supreme Court decisions extending *Bivens*.  These decisions include a case just last year with strikingly similar facts – *Hernandez v. Mesa*, 140 S. Ct. 735 (2020) – in which

the Court refused to extend *Bivens* to claims similar to those asserted in this case. The Fifth Circuit has followed the Supreme Court's direction, dramatically tightening the scope of *Bivens* cases.

5.      Plaintiffs cannot escape the direction of the Supreme Court. This Court should adopt the Report and Recommendation of the Magistrate Judge, finding a new *Bivens* context here and refusing to expand *Bivens*. Plaintiffs' *Bivens* claims against Agent Barrera must therefore be dismissed, leaving Plaintiffs to pursue remedies against both Agent Barrera and the United States of America ("**Government**") through the other avenues identified in their Complaint. *See* ECF No. 1.

## II.   RELEVANT FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

### A.  Relevant factual allegations.

6.      The Complaint alleges that Agent Barrera was a U.S. Border Patrol Agent assigned to the Laredo South Station. ECF No. 1 ¶¶ 11, 14. Plaintiffs assert that Agent Barrera was acting within the scope and course of his employment with the U.S. Border Patrol. *Id.* ¶ 13.

7.      The Complaint further alleges that on May 23, 2018, Claudia Patricia Gomez Gonzalez ("**Decedent**") was traveling with "a few other people" along Centeno Lane in Rio Bravo, Texas, which is about one-third of a mile from the Rio Grande. *Id.* ¶ 20. She allegedly was not carrying a weapon or "anything that could be perceived as a weapon." *Id.* ¶ 21.

8.      The Decedent and her group were allegedly "in the corner of a private, residential, fenced-in lot with overgrown weeds and brush" when Agent Barrera encountered them. *Id.* ¶ 22.

9.      The Complaint alleges that two people from the group ran toward the river and two others ran toward a nearby mobile home. *Id.* ¶ 23. The Decedent and another person allegedly stayed in the vacant lot. *Id.*

10.     The Complaint alleges that Agent Barrera drew his weapon and, when the Decedent took a step, "aimed at her, pulled the trigger, and shot her in the head." *Id.* ¶ 24. Agent Barrera then allegedly chased the two men who hid in the mobile home. *Id.* The Complaint alleges that the

Decedent died shortly after other Border Patrol agents arrived on the scene.  *Id.* ¶¶ 24–25.

11.     The Complaint further alleges that the Decedent and the people in Decedent's group did not possess any weapons and did not pose any threat to Agent Barrera, "let alone as posing any imminent danger of serious physical injury or death."  *Id.* ¶ 28.

12.     The Complaint notes that U.S. Customs and Border Protection ("**CBP**") issued a press release stating that members of the Decedent's group had used "blunt objects" to attack a Border Patrol agent and that the Decedent was one of the attackers.  *Id.* ¶ 29.  Plaintiffs allege that CBP later retracted the release and released a new release that omitted the reference to "blunt objects" and to the Decedent being one of the people who attacked the agent.  *Id.*  The Complaint claims – on "information and belief" – that CBP retracted the first release because it had determined that the agent's claim that he was assaulted was not credible.  *Id.*

**B.  Procedural history.**

13.     Agent Barrera filed his motion to dismiss on September 29, 2020.  ECF No. 30. Plaintiffs subsequently filed a response and Agent Barrera filed a reply in support of his motion. ECF Nos. 38, 43.

14.     This case was stayed following the Magistrate Judge's order on December 1, 2020. ECF No. 41.  The stay did not include the pending motion to dismiss.  *Id.*  The stay was due to the fact that the Government was conducting a criminal investigation regarding the alleged facts of the case.  ECF No. 39.

15.     That criminal investigation has concluded, and the Government stated it does not anticipate taking further action in the criminal matter.  ECF No. 48.  As such, the stay was lifted on July 7, 2021.  ECF No. 49.

16.     As to the motion to dismiss, the Magistrate Judge filed his Report and Recommendation on July 19, 2021.  ECF No. 50.  Plaintiffs filed their Objections on August 2,

2021.  ECF No. 53.  Agent Barrera files this Response in accordance with Federal Rule of Civil

Procedure 72(b)(2).

### III.   ARGUMENT AND AUTHORITIES

**A.  Governing law.**

17.     Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim must be

dismissed if the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  The general pleading standard set forth in Federal Rule of Civil Procedure 8(a) states that a

pleading must provide "a short and plain statement of the claim showing that the pleader is entitled to

relief."  While Rule 8(a) does not require "detailed factual allegations," it demands more than "an

unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal citation and quotations omitted); *see also Papasan v. Allain*, 478 U.S. 265,

286 (1986) (stating that courts are not bound to accept as true legal conclusions couched as factual

allegations).

18.     A claim cannot survive a Rule 12(b)(6) motion to dismiss unless it contains sufficient

factual matter "to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678

(internal citation and quotations omitted).  It is not enough to show "a sheer possibility that a

defendant has acted unlawfully."  *Id*.  "Where a complaint pleads facts that are merely consistent

with a defendant's liability, it stops short of the line between possibility and plausibility of

entitlement to relief."  *Id.*  (internal citation and quotations omitted).  Dismissal is also warranted

where the pleading offers only "a formulaic recitation of the elements of a cause of action" and

"naked assertions" devoid of "further factual enhancement."  *Id.*  (internal citation and quotations

omitted).

19.     In accordance with 28 U.S.C. § 636(b)(1), this Court is required to "make a de novo

determination of those portions of the [magistrate judge's] report or specified proposed findings or

recommendations to which objection [has been] made." After conducting this review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*; *see also* Fed. R. Civ. P. 72(b)(3).

**B. This case presents a new *Bivens* context.**

20.     Plaintiffs first argue that the Report and Recommendation erred in finding a new context because their *Bivens* claims are merely garden-variety excessive force claims against a federal law enforcement officer and thus within the scope of *Bivens* itself. ECF No. 53 at 5–6. This argument ignores both the particular facts of *Bivens* and the case law that has evolved in the years since *Bivens*.

21.     In *Abbasi*, 137 S. Ct. at 1859–60, the Supreme Court set forth a two-part test to determine whether a claim under *Bivens* could proceed. First, courts must determine whether a case presents a new context by asking whether it differs in a meaningful way from previous *Bivens* cases decided by the Supreme Court. *Id.* Second, if the case does present a new *Bivens* context, courts must analyze whether special factors counsel hesitation before allowing the suit to proceed. *Id.*

22.     The Court warned, however, that the first prong of this test poses a very high bar: "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Id.* at 1859. The Court then gave a list of examples that, while not exhaustive, "might prove instructive." *Id.* at 1859–60. That list included potential meaningful differences in the rank of officers involved, the constitutional right at issue, the generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted, the statutory or legal mandate under which the officer was operating, the risk of disruptive intrusion by the Judiciary into the functioning of other branches, or the presence of potential special factors that previous *Bivens* cases did not consider. *Id.* at 1860.

23.     The Fifth Circuit has observed that, under *Abbasi*, a case must present facts that are functionally identical to those of previous *Bivens* cases. Just this past September, the Fifth Circuit

explained:

> Today, *Bivens* claims generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area: (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment . . . ; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment . . . ; and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment . . . .

*Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020) (describing *Bivens*, *Davis*, and *Carlson*, respectively) (internal citations omitted).  "***Virtually everything else*** is a new context." *Id.* (internal quotation marks omitted) (emphasis added).  Similarly, the Fifth Circuit emphasized that courts do not define a *Bivens* cause of action at the level of the constitutional provision allegedly violated or "even at the level of the unreasonable-searches-and-seizures clause"; the facts of the case must be materially indistinguishable. *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) ("And he thinks he's home free because his malicious-prosecution-type-claim alleges a violation of his Fourth Amendment right to be free from unlawful seizures—the same right recognized in *Bivens*. That's wrong.").

       i.    <u>This case presents several meaningful differences from Bivens itself.</u>

24.     In *Bivens*, agents of the Federal Bureau of Narcotics entered petitioner's New York City apartment and arrested him for alleged narcotics violations.  403 U.S. at 389.  The agents then searched the apartment and later took petitioner to a federal courthouse where he was interrogated, booked, and subject to a visual strip search.  *Id.*  Based on these facts, the Court created an implied cause of action under the Fourth Amendment to recover money damages for any injuries, while recognizing that petitioner's only available remedy for such injuries at the time was under state tort law.  *Id.* at 390—91.  The factual differences between *Bivens* and this case are legion.

25.     First, Plaintiff's suggestion that the incident in this case took place in a "residential" setting is fanciful.  ECF No. 53 at 10.  Agent Barrera stumbled on Decedent and her group in a vacant

lot a few hundred yards from the U.S.-Mexico border.  ECF No. 1 ¶ 22.  The encounter was outside

and in broad daylight.  *Id.* ¶ 20.  There is no suggestion that the vacant lot was owned by the Decedent

or anyone in her group, or that any of them were residing on that property.  The encounter might has

well have taken place on a city street.  The fact that some third party owned the vacant lot is immaterial.

These facts are a far cry from the warrantless incursion into petitioner's private home that was at issue

in *Bivens*, with all the special constitutional concerns that arise from government intrusion into a private

home.  *See Payton v. New York*, 445 U.S. 573, 590 (1980) ("In terms that apply equally to seizures of

property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the

house.").  Indeed, the fact that Plaintiffs believed it necessary to contort the term "residential" to apply

outdoors in a third-party's vacant lot itself demonstrates the futility of Plaintiffs' arguments.  The

location itself is sufficient difference to end the "new context" analysis.

26.     A second material difference is the nature of the incident itself.  Agent Barrera was

alone when he happened upon a group of undocumented immigrants a few hundred yards from the

U.S.-Mexico border.  ECF No. 1 ¶ 22.  Agent Barrera's subsequent actions – even in Plaintiffs' account

– were the product of surprise and impulse.  *Id.* ¶ 22–24.  By contrast, in *Bivens*, multiple agents

planned the entry into the plaintiff's apartment and thus had the opportunity to determine a

constitutional plan and otherwise organize their actions.  *Bivens*, 403 U.S. at 389.  The ability to plan

and respond is a material difference between the two cases.  *See Abbasi*, 137 S. Ct. at 1860 (noting the

extent of judicial guidance as to how an officer should respond to the problem or emergency to be

confronted as an example of a meaningful difference).

27.     Third, the encounter here occurred a few hundred yards from an international border

by an officer tasked with enforcing immigration laws.  *Id.*  *Bivens* took place in an apartment in New

York City by officers enforcing the narcotics laws, raising an entirely different set of legal mandates.

*See Abbasi*, 137 S. Ct. at 1860 (noting statutory or legal mandate under which officer was operating

as an example of a meaningful difference); *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985) ("Consistently, therefore, with Congress' power to protect the Nation by stopping and examining persons entering this country, the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior.").

28.     Finally, as detailed in the motion to dismiss, there are multiple other factual differences between this case and *Bivens*.[1]  *See* ECF No. 30 ¶¶ 23–25; *Abbasi*, 137 S. Ct. at 1859–60.  *Bivens* involved agents of the Federal Bureau of Narcotics; this case involved a different agency, the United States Border Patrol.  *See id.*  *Bivens* involved the temporary detention of the plaintiff and a strip search; this case involves a quick-moving encounter in which the Decedent was shot.  *See id.*  *Bivens* involved the law regarding searches and seizures; this case involves the law regarding the use of deadly force.  *See id.*

29.     Plaintiffs' argument is essentially unbound by any reasonable limiting principle. Under their interpretation, any claim seeking damages for unconstitutionally excessive force by an agent tasked with enforcing the law on any kind of private property would create an implied cause of action under *Bivens*.  There is no way to square that interpretation with the Supreme Court and Fifth Circuit's repeated, explicit, and clear limitations on the scope of *Bivens* claims.  *See Abbasi*, 137 S. Ct. at 1864 (holding a claim for prisoner mistreatment presented a meaningful difference from *Carlson* because it was against the warden rather than prison guards themselves and judicial guidance available to the warden was less developed) (citing *Carlson v. Green*, 446 U.S. 14 (1980) (allowing *Bivens* claim for failure to provide medical care to prisoner); *see also Oliva*, 973 F.3d at 441–42 (noting a modest extension of *Bivens* is still an extension).

---

[1] Agent Barrera would also point the Court to the motion to dismiss for an analysis on how this case meaningfully differs from *Davis* as well, which the Magistrate Judge also correctly found. *See* ECF Nos. 30 ¶ 26; 50 at 7.

30.     Indeed, the import of the Supreme Court's recent opinion in *Hernandez* is inescapable.  There, in a case involving the alleged use of excessive force by a Border Patrol agent along the U.S.-Mexico border, the Court summarily concluded that "[t]he *Bivens* claims in this case assuredly arise in a new context."  140 S. Ct. at 743.  The Court rejected the plaintiffs' argument that their claims involved the same constitutional provisions as *Bivens* and *Davis* as resting on a "basic misunderstanding of what our cases mean by a new context."  *Id.*  The Court then observed that once it looked "beyond the constitutional provisions invoked in *Bivens*, *Davis*, and the present case" it was "glaringly obvious that petitioners' claims involve a new context, i.e. one that is meaningfully different."  *Id.*

31.     *Bivens* therefore cannot be said to have created a cause of action for Plaintiffs as the case here presents several meaningful differences from the circumstances in *Bivens*.

ii.     <u>Fifth Circuit case law does not create an established *Bivens* claim for this matter.</u>

32.     In their Objections, Plaintiffs next argue that courts in the Fifth Circuit and others have recognized the availability of *Bivens* actions against immigration officers who deploy unconstitutionally excessive force.  *See* ECF No. 53 at 7.  That argument both ignores Supreme Court law, mischaracterizes the opinions of the Fifth Circuit, and points to cases that pre-date *Abbasi* and *Hernandez*.

33.     In 2017, the U.S. Supreme Court stated that the test for determining whether a case presents a new *Bivens* context is as follows: "If the case is different in a meaningful way from previous *Bivens* cases decided by **this Court**, then the context is new."  *Abbasi*, 137 S. Ct. at 1859 (emphasis added).  In the same holding, the Court explicitly stated that *Bivens*, *Davis*, and *Carlson* "represent the only instances in which the Court has approved of an implied damages remedy

under the Constitution itself."[2]  *Id.* at 1855.

34.     Following the Supreme Court's direction, three Fifth Circuit decisions since *Abbasi* have reinforced that all cases other than those with virtually identical facts to the three approved *Bivens* cases will be considered a "new context."  *See Cantú*, 933 F.3d at 423 (5th Cir. 2019) ("In the wake of *Abbasi*, our Court and at least one of our sister circuits have rejected new Fourth Amendment claims under *Bivens*."); *Oliva*, 973 F.3d at 442–443 (finding numerous meaningful differences with *Bivens*, including the location, the nature of the incident, the legal mandate, the type of force used, and the differing legal guidance in the two types of incidents); *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) (stating, "In *Oliva*, we held that *Bivens* claims are limited to three situations," and going on to explain the highly specific facts of *Bivens*, *Davis*, and *Carlson* in detail).

35.     Plaintiffs' reliance on selected quotes from a handful of other opinions, which mostly predate *Abbasi* and/or are outside the Fifth Circuit, is therefore misplaced.  *See* ECF No. 53 at 7–8.  Furthermore, Plaintiffs cannot ignore the fact that this incident occurred along an international border under a Border Patrol agent's unique duty to secure the border – similarities to *Hernandez* that cannot simply be disregarded. Plaintiffs' attempt to sidestep *Hernandez* and rely on outdated or inapplicable case law cannot rescue their claims.  *See id.*

36.     Nothing Plaintiffs have pointed to indicates that a *Bivens* cause of action automatically exists in this case.  This is in line with the Magistrate Judge's finding, which this Court should adopt. *See* ECF No. 50 at 8.

> iii.     <u>The Report and Recommendation did not err in finding a new *Bivens* context.</u>

37.     Plaintiffs contend that the Report and Recommendation errs in finding a new *Bivens*

---

[2] Of the three cases, the only one remotely in the sphere of the matter at hand is *Bivens* itself, and Defendant has already shown above why *Bivens* itself does establish a cause of action here.

context for multiple reasons.  None have merit.

38.     First, Plaintiffs contend that the Report and Recommendation erred by "separating out" the Fourth and Fifth Amendment *Bivens* analyses, suggesting that *Hernandez* somehow required that the two types of *Bivens* claims be analyzed "together."  ECF No. 53 at 9.  Yet nothing in *Hernandez* forbids a court from being thorough in its analysis and comparing the facts of this case to the facts of the *Bivens* cases one at a time.  Indeed, the Fifth Circuit did just that in its recent opinion in *Byrd v. Lamb*, in which it first analyzed the plaintiff's Fourth Amendment claims as compared to *Bivens*, where rights under the Fourth Amendment were at issue.  990 F.3d 879, 882 (5th Cir. 2021) (finding new *Bivens* context and dismissing claims).[3]  Any difference in the way that *Hernandez* chose to analyze the claims and the way the Magistrate Judge did here (and the Fifth Circuit did in *Byrd*) is no basis to object to the Report and Recommendation.

39.     However Plaintiffs' claims are analyzed – whether separately by Amendment or together – the meaningful differences between this case and *Bivens* are inescapable.  As noted above, this incident arose in a vacant lot rather than a private home, involved patrolling the U.S.-Mexico border rather than a narcotics investigation, and Agent Barrera did not manacle and strip-search the Decedent.  As such, "As explained in *Oliva*, [plaintiff's] case presents a new context." *Byrd*, 990 F.3d at 882*.  Davis* and *Carlson* also provide no additional relief.  Agent Barrera did not discriminate based on sex nor fail to provide medical attention, making this a new *Bivens* context. *See id.*

40.     Plaintiffs next assert that *Hernandez* is not persuasive because it involved a cross-border shooting, while this case involved a shooting near the border.  ECF No. 53 at 9.  That is a distinction without a difference for the purposes of this analysis.  The Magistrate Judge correctly

---

[3] Defendant notes that this case is from March 2021, which is after the parties submitted their briefing on the motion to dismiss.

found that the incident here is akin to *Hernandez* because the shootings arose after the agents were charged with securing the border against illegal activity, which is a "fundamentally different context" than *Bivens*, *Davis*, or *Carlson*.  ECF No 50 at 6.

41.     Plaintiffs' contention that *Angulo v. Brown*, 978 F.3d 942, 948 fn.3 (5th Cir. 2020) supports the availability of a *Bivens* remedy also fails.  *See* ECF No. 53 at 10.  In that case, the Fifth Circuit expressly refused to conduct a *Bivens* analysis since it was not raised by defendants and the district court had granted summary judgment in favor of the defendants on qualified immunity grounds.  *Id.* (stating *in dicta* that it will "assume without deciding that a *Bivens* remedy is available").  Notably, the Fifth Circuit explicitly acknowledged that it was not reaching the conclusion that Plaintiffs advocate here: "We can resolve this case now, without having to decide—lacking the benefit of a district court opinion and with only a single paragraph of briefing—whether *Hernandez* should be understood to categorically preclude *Bivens* actions against CBP agents at the border."  *Id.*

42.     Moreover, any ambiguity in the Fifth Circuit's direction in *Angulo* has also been extinguished by *Byrd*.  There, the Fifth Circuit found that *Bivens* claims based on an alleged assault by a Homeland Security agent presented a new *Bivens* context and dismissed the claims.  *Byrd*, 990 F.3d at 882.  That decision conclusively forecloses Plaintiffs' claim that a *Bivens* remedy somehow automatically exists for any excessive force claims against an agent under the purview of the Department of Homeland Security, such as Agent Barrera.

43.     Third, Plaintiffs argue that Agent Barrera's agency or rank does not present a new context because Border Patrol agents operate under the same mandates as the narcotic officers in *Bivens*.  ECF No. 53 at 11.  The Magistrate Judge correctly concluded that there is a meaningful difference between the rank of the officers here and in *Bivens*, as Agent Barrera is a Border Patrol agent overseen by the Department of Homeland Security whereas the agent in *Bivens* was a federal

drug enforcement agent under the Department of Justice.  ECF No. 50 at 7.  The Fifth Circuit's holding in *Byrd*, finding a meaningful difference between an incident involving a Homeland Security agent and *Bivens*, supports this finding.  990 F.3d at 882.

44.     Finally, the Magistrate Judge did not err in distinguishing this case from *Bivens* based on location and the nature of the seizure.  For all the reasons described above, the location and nature of the seizure meaningfully differ from *Bivens*.  This remains true whether the seizure was Agent Barrera's initial encounter with Decedent, in the moments when the other members of the group began to run, or when Decedent was shot.

45.     Plaintiffs' excessive force claims under the Fourth Amendment present clear meaningful differences from *Bivens*, *Davis*, and *Carlson*.  Plaintiffs' due process claims under the Fifth Amendment also present meaningful differences from *Bivens*, *Davis*, and *Carlson*.  This scenario presents a new context, akin to *Hernandez* in which the Court held a *Bivens* claim does not exist.  The law is clear that the facts of this case are sufficiently different than existing *Bivens* cases.  The Court must therefore move to the second step of the *Abbasi* analysis and determine whether to engage in the "disfavored judicial activity" of extending *Bivens* to a new set of facts.  *Abbasi*, 137 S. Ct. at 1857.

**C. *Bivens* should not be extended into this new context.**

46.     This Court should heed the clear guidance from the Supreme Court not to extend *Bivens* into this new context for two reasons.  First, adequate remedies exist to address Plaintiffs' alleged harm absent *Bivens*.  Second, special factors counsel against extending *Bivens*.

i.     <u>Adequate remedies exist to redress any alleged harms absent *Bivens*.</u>

47.     Plaintiffs assert that contrary to the Report and Recommendation's conclusion, the existence of an alternative remedy here does not foreclose a suit under *Bivens*.  ECF No. 53 at 13.  That assertion is false.

48.     As the Magistrate Judge rightly recognized, the Federal Tort Claims Act ("**FTCA**") provides Plaintiffs with an adequate redress against the Government and state tort law provides Plaintiffs with a redress against Agent Barrera.   Both avenues provide incentives that deter unconstitutional conduct while also providing roughly similar compensation to victims, as Plaintiffs admit is the measure of adequacy.  *See* ECF No. 53 at 13.

49.     Plaintiffs' argument that *Carlson* supports the proposition that the FTCA is not an adequate alternative remedy is misguided.  In *Carlson*, the Supreme Court acknowledged that *Bivens* and the FTCA could work in parallel.  *See* 446 U.S. at 20.  Case law since *Carlson*, however, indicates that the availability of a remedy under the FTCA is a significant factor, among others, that counsels against extending *Bivens* into a new context.  *See Abbasi*, 137 S. Ct. at 1863 (explaining that when alternative methods of relief are available a *Bivens* remedy usually is not); *Cantú*, 933 F.3d at 423 (echoing *Abbasi*).  In *Oliva*, for example, the Fifth Circuit held that the plaintiff's pursuit of an administrative complaint against federal officers and suing the United States under the FTCA showed there was a viable alternative remedial scheme to *Bivens*.  973 F.3d at 444 ("That the FTCA might not give Oliva everything he seeks is therefore no reason to extend *Bivens*."); *see also Smith v. Clark*, No. 5:19-CV-00675-JKP, 2020 WL 5820534, at *5 (W.D. Tex. Sept. 29, 2020) ("The Fifth Circuit has therefore found that, post-*Abbasi*, the FTCA as a potential remedy counsels hesitation in extending a Bivens remedy.").  Here, Plaintiffs have both pursued administrative tort claims against Agent Barrera and filed suit against the Government under the FTCA, the same relief pursued in *Oliva*.

50.     Finally, Plaintiffs ignore the availability of state law tort claims, which provide another avenue for potential relief.  *See* ECF No. 1 ¶¶ 84–95; *Abbasi*, 137 S. Ct. at 1858 (noting state tort law that provides an alternative means for relief as an example of an alternative, existing process for protecting the injured party's interest) (collecting cases).

ii.   Special factors counsel against extending *Bivens* into this context.

51.    Several other special factors, in addition to the existence of an alternative remedial structure, also counsel hesitation before extending *Bivens*.

52.    First, this Court must consider congressional failure to create a statutory vehicle to recover damages from federal agents, particularly given the national attention received by events alleging excessive force by law enforcement along the U.S.-Mexico border.   As the Fifth Circuit explained in *De La Paz v. Coy*, 786 F.3d 367, 377 (5th Cir. 2015), Congress's institutional silence regarding authorizing damages remedies against individual agents involved in civil immigration enforcement "speaks volumes."   *See also Abbasi*, 137 S. Ct. at 1862 ("The factors discussed above all suggest that Congress' failure to provide a damages remedy might be more than mere oversight, and that congressional silence might be more than inadvertent.") (internal quotations omitted).

53.    Second, national security is another important factor for the Court to consider.   Just last year, the Supreme Court in *Hernandez* explained that "[o]ne of the ways in which the Executive protects this country is by attempting to control the movement of people and goods across the border, and that is a daunting task."   140 S. Ct. at 746.   Those national security concerns do not disappear simply because an incident took place shortly after an undocumented immigrant crossed the Rio Grande, rather than shortly before.   Agent Barrera and other Border Patrol agents are daily involved in the "daunting task" of attempting to control movement of people across the border, including the Decedent and other members of her group.   Indeed, the Court in *Hernandez* made clear that is the agents' role on the border – not whether a particular bullet crossed the river – that triggers national security concerns.   *See Hernandez*, 140 S. Ct. at 746 ("For these reasons, the conduct of agents positioned at the border has a clear and strong connection to national security,

as the Fifth Circuit understood.").[4]  Those concerns weigh strongly against extending *Bivens*: "Since regulating the conduct of agents at the border unquestionably has national security implications, the risk of undermining border security provides reason to hesitate before extending *Bivens* into this field."  *See id.* at 747.

54.     Plaintiffs' contention that *Hernandez* is "inapposite" is wholly unpersuasive. ECF No. 53 at 15.  *Hernandez* dealt specifically with regulating the conduct of Border Patrol agents securing the U.S.-Mexico border.  The fact that the bullets in that case crossed the border and those in this case did not cross does not change the special factors at issue in Border Patrol shootings, as noted above. The Magistrate Judge rightly found *Hernandez* persuasive in recommending not to extend *Bivens* into this new context.  *See* ECF No. 50 at 9.

55.     Defendant maintains that the Court should not disregard *Hernandez* and decades of case law to recognize a new *Bivens* context in this case.  *See De La Paz*, 786 F.3d at 372 ("The Court has not created a new *Bivens* remedy in the last thirty-five years, although it has reversed more than a dozen appellate decisions that had created new actions for damages.") (internal quotations omitted). This Court should instead adopt the magistrate Judge's Report and Recommendation, grant Agent Barrera's motion, and dismiss Plaintiffs' *Bivens* claims.

## IV.   CONCLUSION

56.     For the foregoing reasons and the reasons identified in the motion to dismiss, Plaintiffs' Third, Fourth, Fifth, and Sixth causes of actions do not state a claim under which relief can be granted and should be dismissed. Agent Barrera asks this Court to adopt the Magistrate Judge's Report and Recommendation in its entirety.  Agent Barrera further requests all other relief,

---

[4] Defendant notes that while *Hernandez* dealt with a cross-border shooting rather than a shooting on the immediate U.S.-side of the border, the Court's national security special factor analysis was not dependent on the transnational nature of the incident there.  *See Hernandez*, 140 S. Ct at 746–47.

at law or in equity, to which he may be justly entitled.

Dated: August 16, 2021

Respectfully submitted,

**DAVIS & SANTOS, P.C.**

By: */s/ Jason M. Davis*
    Jason M. Davis
    **Attorney-In-Charge**
    Texas State Bar No. 00793592
    Southern District No. 20114
    Email: jdavis@dslawpc.com
    Stephanie L. Dodge
    Texas State Bar No. 24105336
    Southern District No. 3599198
    Email: sdodge@dslawpc.com
    719 S. Flores Street
    San Antonio, Texas 78204
    Tel: (210) 853-5882
    Fax: (210) 200-8395

    ***Attorneys for Defendant***
    ***Romualdo Barrera***

## CERTIFICATE OF SERVICE

I certify that on the 16th day of August 2021, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

*/s/ Jason M. Davis*
Jason M. Davis

17