Case 5:20-cv-00081 Document 61 Filed on 09/29/21 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
September 29, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **GILBERTO GOMEZ VICENTE**, *et al*, | § |
| | § |
| Plaintiffs, | § |
| VS. | § CIVIL ACTION NO. 5:20-CV-81 |
| | § |
| **UNITED STATES OF AMERICA**, *et al*, | § |
| | § |
| Defendants. | § |

## MEMORANDUM & ORDER

This case arises from the tragic shooting and death of Claudia Patricia Gomez Gonzalez ("Claudia") in the border town of Rio Bravo, Texas. (Dkt. 1 at 4.)[1] Plaintiffs are the parents and estate administrator of Claudia and assert a variety of claims against Defendants United States of America, Border Patrol Agent Romualdo Barrera, and Does 1–20. (*Id.* at 3.) Specifically, Plaintiffs allege that Defendant Barrera unlawfully shot and killed Claudia while acting within the course and scope of his employment as a Border Patrol agent.[2] (*Id.* at 4–5.) Defendant Barrera has filed a Motion to Dismiss (Dkt. 30) asserting that Plaintiffs failed to state viable *Bivens* claims against him. (*Id.* at 5.)

Pending is the Magistrate Judge's Report and Recommendation (Dkt. 50), which recommends that Defendant Barrera's Motion to Dismiss (Dkt. 30) be granted and that Plaintiffs' *Bivens* claims be dismissed. (Dkt. 50 at 9.) The recommendation (Dkt. 50) concludes that these specific claims, labeled in Plaintiffs' Complaint (Dkt. 1) as their third, fourth, fifth, and sixth

---

[1] Page number citations refer to the page numbers automatically generated by the Court's electronic filing system (CM/ECF), not to the page numbers generated by Parties.

[2] Plaintiffs believe Defendant Barrera was the agent who shot and killed Claudia and alternatively assert that, if it was not him, it was one of Defendant Does 1–20. (Dkt. 1 at 5.) For the sake of clarity, the Order refers to Defendant Barrera as the individual who is alleged to have shot and killed Claudia.

causes of action, were not cognizable as *Bivens* claims and should therefore be dismissed. (Dkt. 50 at 9.)

Parties were duly noticed regarding the filing of objections to the recommendation (Dkt. 50), and Plaintiffs filed their objections (Dkt. 53) on August 2, 2021. In support of the recommendation (Dkt. 50), Defendant Barrera filed a response (Dkt. 55) to the objections (Dkt. 53). Plaintiffs have filed a reply (Dkt. 57) to the response (Dkt. 55). Because objections were filed, the Court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 18 U.S.C. § 636(b)(1)(C). Plaintiffs object to the central legal conclusions of the recommendation (Dkt. 50), i.e., that Plaintiffs' claims arise in a "new context" and that "special factors" counsel against providing a remedy under *Bivens*.[3] (Dkt. 53 at 5–6.) Accordingly, the Court reviews those conclusions *de novo*. Having considered the relevant law and facts as laid out in the record, the Court concludes that the Magistrate Judge's Report and Recommendation (Dkt. 50) should be adopted, and that the Motion to Dismiss (Dkt. 30) should be granted.

## Discussion

Unless otherwise indicated in the sections below, the Court adopts the factual background, procedural history, and legal standard laid out in the recommendation (Dkt. 50) and does not recount them here. Additionally, no Parties object to the Magistrate Judge's identification of the applicable legal framework for determining whether Plaintiffs' claims are cognizable under *Bivens*, so the Court need not recount that either. However, for the sake of clarity and emphasis, the Court provides a brief overview.

---

[3] Plaintiffs also object to a number of the Magistrate Judge's factual findings as they relate to those legal conclusions. To the extent necessary, the Court addresses these factual objections below.

The basic rule for determining whether a plaintiff's claim is cognizable under *Bivens*, i.e., whether *Bivens* should be extended to cover claims outside those types of claims already allowed by the Supreme Court, follows a two-step inquiry. *Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020). First, a court asks whether the claim "arises in a 'new context' or involves a 'new category of defendants.'" *Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020) (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). A context is "new" if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Id.* (citing *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1859 (2017)). Those three cases are:

> (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, *see* [*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389–90 (1971)]; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

*Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020).

Second, if a court finds that a claim arises in a new context, it must then ask whether there are any "special factors that counsel hesitation" about allowing the claim to proceed under *Bivens*. *Hernandez*, 140 S.Ct. at 743 (cleaned up) (citing *Ziglar*, 137 S.Ct. at 1880). Although there is no "exhaustive list" of factors, the Supreme Court has explained that "separation-of-powers principles" are central to this analysis. *Id.* (citing *Ziglar*, 137 S.Ct. at 1857). In addition, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 137 S.Ct. at 1858. To put it simply, extending *Bivens* is now a "disfavored judicial activity," and the Supreme Court has emphasized repeatedly that the "watchword is caution." *Hernandez*, 140 S.Ct. at 742. With that in mind, the Court considers Plaintiffs' objections.

The Court turns first to Plaintiffs' objections arguing that their *Bivens* claims do not arise in a new context. The Court then turns to Plaintiffs' objections arguing that even if their *Bivens* claims arise in a new context, there are no special factors counseling against extending the remedy offered by *Bivens* to the situation alleged here.

A.  **"New Context" Objections**

Plaintiffs' objections to the Magistrate Judge's conclusion that their claims arise in a new context fall into two broad categories. First, Plaintiffs argue generally that their claims cannot fall into a new context because this case is a "garden variety excessive force case against a federal law enforcement officer." (Dkt. 53 at 9.) Second, Plaintiffs more specifically attack each of the Magistrate Judge's bases for labeling this case as a new context. (Dkt. 53 at 13.) The Court addresses each category of objections in turn.

1.  **General Objection**

Plaintiffs' invocation of the "garden variety excessive force case" stems from a statement in the introductory paragraph of the Fifth Circuit's opinion in *Hernandez v. Mesa*, 885 F.3d 811 (5th Cir. 2018)—an opinion that was later affirmed by the Supreme Court. But this invocation is unpersuasive for two reasons: (1) the past judicial opinions that Plaintiffs cite in support hold no precedential force and little persuasive value; and (2) the Fifth Circuit's more recent opinions confirm that the "garden variety excessive force case" label is insufficient to presumptively allow a claim to proceed under *Bivens*.

First, Plaintiffs cite to a number of federal court opinions to demonstrate that courts, including the Fifth Circuit, have previously "permitted a noncitizen's *Bivens* claims against a Border Patrol agent for unlawful arrest and excessive force to proceed." (Dkt. 53 at 11.) Of course, the out-of-circuit and district court opinions are not binding precedent. Neither are they

persuasive because they did not have the benefit of considering, or being bound by, recent Fifth Circuit opinions on the permitted scope of *Bivens* claims. Moreover, the Fifth Circuit opinion that Plaintiffs cite to, *Martinez-Aguero v. Gonzalez*, 459 F.3d 618 (5th Cir. 2006), is equally unavailing for precedential and persuasive purposes. Indeed, Plaintiffs do not argue that *Martinez-Aguero* has any precedential force. (*See* Dkt. 53 at 11.)

In *Martinez-Aguero*, the Fifth Circuit was faced only with the question of whether a Border Patrol officer, who had been sued for false arrest and excessive force under the Fourth and Fifth Amendments, was entitled to qualified immunity. *Martinez-Aguero*, 459 F.3d at 621–22. The primary issue before the *Martinez-Aguero* court was "whether aliens enjoy Fourth or Fifth Amendment protection at all." *Id.* at 626. Finding that the undocumented alien in that case was entitled to constitutional protections, the Fifth Circuit stated that "she may bring a *Bivens* claim for unlawful arrest and the excessive use of force." *Id.* at 625. However, the *Martinez-Aguero* court never considered whether the plaintiff's claim was cognizable under *Bivens*, so this statement is only an assumption as to the availability of *Bivens* in that regard. Thus, this assumption is not binding because the issue was not raised by any party and the Fifth Circuit did not consider it.[4] *See Ochoa-Salgado v. Garland*, 5 F.4th 615, 619–20 (5th Cir. 2021). Further,

---

[4] The Court notes that the Fifth Circuit's opinion in *De La Paz v. Coy*, 786 F.3d 367 (5th Cir. 2015) appears to ascribe some binding force to *Martinez-Aguero* and *Lynch v. Cannatella*, 810 F.2d 1363 (5th Cir. 1987), another case that "assumed the existence of *Bivens* suits for physical abuse perpetrated against immigration detainees." *See De La Paz*, 786 F.3d at 373–374. In *De La Paz*, the Fifth Circuit "defer[red] to both of these prior decisions, to the extent that they permit *Bivens* actions against immigration officers who deploy unconstitutionally excessive force when detaining immigrants on American soil." *Id.* at 374. However, the Court need not read into whether this statement of deference was an affirmation of the precedential status of either *Martinez-Aguero* or *Lynch* because the statement of deference itself was *dictum*. The *De La Paz* court ultimately noted that the case was distinguishable from the prior cases "because it involve[d] no allegations of excessive force." *Id.* at 374. Thus, the statement of deference "could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that

because the *Martinez-Aguero* court provides no reasoned explanation for this assumption, the Court concludes that the assumption alone is unpersuasive, especially given more recent Fifth Circuit opinions.

Second, these more recent Fifth Circuit opinions counsel against taking the *Martinez-Aguero* assumption at face-value. They also confirm that presumptively extending *Bivens* to cases that can be generally described as "garden variety excessive force cases" is inapt. For example, the Fifth Circuit in *Angulo v. Brown*, 978 F.3d 942 (5th Cir. 2020) dealt with a case involving *Bivens* claims brought against Customs and Border Protection officers for alleged unreasonable seizure and use of excessive force in violation of the Fourth Amendment. *Id.* at 947. The *Angulo* court ultimately exercised its discretion to assume without deciding that a *Bivens* remedy was available for a variety of prudential reasons. *See id.* at 948 n.3. However, in doing so, it noted that the assumption from *Martinez-Aguero* was now potentially at odds with the Supreme Court's decision in *Hernandez* because the *Hernandez* decision "strongly implie[d] that proximity to the border alone is sufficient to qualify as a 'new context' in which *Bivens* is unavailable."[5] *Id.* (citing *Hernandez*, 140 S.Ct. at 747). This at least suggests that the Court

---

uttered it." *See United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (describing when a statement is *dictum*).

[5] The Court recognizes that the *Angulo* court also noted that the case before it, much like this one, did not have the same "international implications of a cross-border shooting" that were of "vital importance" to the *Hernandez* decision. *See Angulo*, 978 F.3d at 948 n.3. The Court only cites to *Angulo* in this section to demonstrate that the *Bivens* issue is not as easily disposed of based on existing case law as Plaintiffs contend. The Court need not decide whether the footnote in *Angulo* stands for or against recognizing the *Bivens* claims presented here. Rather, the Fifth Circuit's refusal to decide the issue is enough to make the point that the "new context" determination cannot be resolved at the level of generality with which Plaintiffs describe the instant case. The Court does note, however, that Judge Oldham, in his concurring opinion, seemed to believe that the majority's footnote "correctly suggests that Angulo lacks a cause of action to sue the individual CBP officers under *Bivens*." *Angulo*, 978 F.3d at 954 (Oldham, J., concurring).

should conduct the "new context" inquiry with more rigor than simply following the *Martinez-Aguero* assumption blindly.

The Fifth Circuit's decision from *Oliva v. Nivar*, 973 F.3d 438 (5th Cir. 2019) is also instructive. There, the Fifth Circuit again dealt with alleged unreasonable seizure and use of excessive force claims under the Fourth Amendment, this time against Veterans Affairs (VA) police officers. *Id.* at 441. Specifically, the plaintiff contended that the VA officers had unreasonably placed him into a chokehold and arrested him after he attempted to go through security at a VA hospital. *Id.* at 440–41. The Fifth Circuit determined that the plaintiff's claim arose in a new context and dismissed his *Bivens* claims, reversing the lower court. *Id.* at 444. At minimum, *Oliva* is proof that a district court must scrutinize any *Bivens* claim at a higher level of specificity than simply describing a case as a "garden variety excessive force case against a federal law enforcement officer." If that description was enough to qualify a claim under *Bivens*, the *Oliva* plaintiff's claims would have done so.

This conclusion is further confirmed by the Fifth Circuit's holding in *Byrd v. Lamb*, 990 F.3d 879 (5th Cir. 2021). In *Byrd*, the Fifth Circuit determined that a Fourth Amendment excessive force claim against a Department of Homeland Security (DHS) agent also arose in a new context. *Id.* at 882. Noting that the district court did not have the benefit of the *Oliva* decision, the *Byrd* court, after also finding special factors counseling against extending *Bivens*, reversed and remanded the district court's decision to allow the *Bivens* claims to proceed. *Id.*

Thus, under existing Fifth Circuit case law, Plaintiffs' general objection to the Magistrate Judge's "new context" finding cannot stand and is overruled. The bar for extending *Bivens* is at least higher than classifying a case as a "garden variety excessive force case" or an "[a]n

unreasonable use of force by a line-level law enforcement officer." (*See* Dkt. 53 at 13.) With that clarification, the Court now turns to Plaintiffs' specific objections.

### 2. Specific Objections

Plaintiffs lodge four objections to the Magistrate Judge's finding that their claims arise in a new context: (1) the Magistrate Judge should not have separated out Plaintiffs' Fourth and Fifth Amendment claims for distinct analyses; (2) the Magistrate Judge erred in distinguishing the instant case from allowable *Bivens* claims based on the fact that Defendant Barrera was "charged with securing the border against illegal activity"; (3) the Magistrate Judge erred in concluding that Defendant Barrera's agency and rank supported a "new context" finding; and (4) the Magistrate Judge should not have distinguished the instant case based on the location and nature of Barrera's seizure of Claudia. (Dkt. 53 at 13–16.)

#### a. Objection 1—Fourth and Fifth Amendment Distinction

Plaintiffs' objection to the Magistrate Judge's analytical distinction between their Fourth and Fifth Amendment claims is inapposite.[6] Plaintiffs argue that the Supreme Court in *Hernandez v. Mesa* did not distinguish between the Fourth and Fifth Amendment claims in that case when it concluded that the claims arose in a new context. (Dkt. 53 at 13 (citing *Hernandez*, 140 S.Ct. at 743).) That is not entirely correct.

In *Hernandez*, the Supreme Court faced the question of whether a plaintiff's claim against a Border Patrol agent for committing a cross-border shooting was cognizable under *Bivens*. *Hernandez*, 140 S.Ct. at 739. The Supreme Court, in declaring that the cross-border shooting incident arose in a new context, cited only *Bivens* and *Davis* for comparison. *See*

---

[6] For context, Plaintiffs' *Bivens* claims include excessive force claims under the Fourth Amendment and "deprivation of life without due process" claims under the Fifth Amendment. (Dkt. 1 at 9–14.)

*Hernandez*, 140 S.Ct. at 743–44. Those cases, as noted above, involved Fourth and Fifth Amendment violations, respectively. The Supreme Court, therefore, appeared to find it appropriate to compare cases involving the same alleged constitutional violations. *See id*. The *Hernandez* court did not, for instance, compare the case before it to *Carlson*, which allowed a *Bivens* claim under the Eighth Amendment. *See id*. That makes some sense because "the constitutional right at issue" is a reason why a case might differ in a meaningful way. *See Zigler*, 137 S.Ct. at 1860. Although the recommendation (Dkt. 50) might have overstated the issue in pronouncing that "[the Fifth Amendment claims] cannot survive the motion to dismiss if this case differs in a meaningful way from [*Davis v. Passman*]," the Magistrate Judge ended up conducting much the same analysis as the Supreme Court in *Hernandez*. (*See* Dkt. 50 at 6.) The Magistrate Judge contrasted *all* of Plaintiffs' constitutional claims with the applicable and previously permitted *Bivens* claims, covering both the Fourth and Fifth Amendment. (*See* Dkt. 53 at 6–7.) The recommendation (Dkt. 50) did not, in fact, recommend dismissal of Plaintiffs' Fifth Amendment claims solely for not conforming to the scenario presented in *Davis*. (*See* Dkt. 53 at 7.) Accordingly, Plaintiffs' objection to the Magistrate Judge's distinction between their Fourth and Fifth Amendment claims is overruled.

          b.      **Objection 2—Characterization of Defendant Barrera's Conduct**

Plaintiffs' objection to the Magistrate Judge's characterization of Defendant Barrera's activities at the time of the incident is unpersuasive. Plaintiffs appear to contend that the recommendation (Dkt. 50) should not have analogized the instant case to *Hernandez* as a reason to dismiss their *Bivens* claims because, unlike here, *Hernandez* involved a cross-border shooting. (Dkt. 53 at 13–14.) They seem to argue that the instant case should be treated as an excessive force claim occurring "in a residential setting within the United States," not as a shooting arising

from border enforcement. (*Id.* at 14.) However, Plaintiffs do not dispute that Defendant Barrera was acting in his capacity as a Border Patrol agent at the time of the incident. (*See* Dkt. 1 at 4 (averring that Defendant Barrera was acting within the course and scope of his employment with the United States Border Patrol).) The Magistrate Judge was correct to consider Defendant Barrera's conduct in relation to his role as a Border Patrol agent as a relevant point of comparison and to review *Hernandez*, a relevant case, in doing so.

As an initial matter, the Court notes that *Hernandez* did not purport to set the floor for determining a new context. Simply because *Hernandez* involved a cross-border shooting does not mean all excessive force cases along the border are automatically permitted as *Bivens* claims if they do not involve a cross-border shooting. That would undercut the cautionary framework that the high court has put in place. Instead, the fact that Defendant Barrera is alleged to have been conducting himself as a Border Patrol agent at the time of the incident does distinguish this case from prior *Bivens* contexts, regardless of the fact that no borders were crossed.

In its recent *Bivens* jurisprudence, the Fifth Circuit has described and distinguished cases with a remarkable level of granularity. In *Oliva*, the Fifth Circuit noted that the VA officers "were manning a metal detector" in a government hospital, not "making a warrantless search for narcotics" in a private home like in *Bivens*. *Oliva*, 973 F.3d at 443. The *Oliva* court additionally explained that "[t]he VA officers did not manacle [the plaintiff] in front of his family or strip-search him," and the narcotics officers in *Bivens*, likewise, did not place the plaintiff there in a chokehold. *Id.* The Fifth Circuit in *Byrd* conducted a nearly identical analysis to conclude that the DHS agent's conduct in that case also demonstrated a new context. *See Byrd*, 990 F.3d at 882; *see also Cantú v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (explaining that differences in

conduct are meaningful because "'[j]udicial guidance' differs across the various kinds of Fourth Amendment violations).

Mirroring the level of specificity used in both *Oliva*, *Byrd*, and *Cantú*, the Court regards the instant case as one where a Border Patrol agent used deadly force to seize Claudia in the course of his general border security duties. Unlike in *Bivens*, the most analogous of the three cases, Defendant Barrera "did not manacle [Claudia] in front of [her] family or strip-search [her]." *See Oliva*, 973 F.3d at 443. Unlike in *Bivens*, Defendant Barrera "[did] not allege the officers entered [her] home without a warrant or violated [her] rights of privacy." *See Cantú*, 933 F.3d at 423. Finally, the Fifth Circuit has specifically pointed out that judicial guidance has placed "seizures by deadly force," the allegation here, in a specific subset of constitutional jurisprudence. *See id*. Plaintiffs' objection to the Magistrate Judge's consideration of Defendant Barrera's conduct at the time of the incident is therefore overruled.

        c.        **Objection 3—Defendant Barrera's Rank and Agency**

Plaintiffs' objection to the Magistrate Judge's findings on Defendant Barrera's rank and agency should be sustained as to rank and overruled as to agency. Plaintiffs object to the Magistrate Judge's finding that Defendant Barrera was of a different rank and agency than the narcotics officers in *Bivens*. (Dkt. 53 at 15.) To the extent that the Magistrate Judge determined that Defendant Barrera was of a different rank, Plaintiffs' objection is sustained. There is no evidence that Defendant Barrera was anything more than a "line-level officer," like the officers in *Bivens*. (*See id.*)

However, Plaintiffs' objection regarding the difference in agency is unavailing. Plaintiffs do not dispute that Border Patrol, a division of Customs and Border Protection, is a different agency than the agency the officers in *Bivens* were employed with, i.e., the Federal Bureau of

Narcotics, which was eventually succeeded by the Drug Enforcement Administration. (*See id.*) Instead, Plaintiffs contend that Customs and Border Protection and the Drug Enforcement Administration should be viewed as non-distinct agencies for the "new context" inquiry because they operate under the same legal mandate. (*Id.*) Specifically, they allege that Border Patrol agents "are cross-designated with the powers conferred by 21 U.S.C. § 878 on agents of the Drug Enforcement Administration." (*Id.*) Section 878 lays out a number of general law enforcement powers such as the authority to make seizures and arrests. *See* 21 U.S.C. § 878(a). Even assuming Border Patrol is cross-designated in this way, the importance of the agency distinction is not diminished. Law enforcement officers across many different agencies are empowered to seize and arrest individuals for unlawful activity, but that similarity is not enough to extend *Bivens*.[7] *See Cantú*, 933 F.3d at 423 (distinguishing between FBI agents and the narcotics officers in *Bivens*). The Court therefore overrules Plaintiffs' objection as it relates to the Magistrate Judge's agency distinction finding.

### d. Objection 4—The Seizure's Location and Nature

Plaintiffs' objection to the Magistrate Judge "distinguishing this case from *Bivens* based on the location and nature of Defendant Barrera's seizure of Claudia" should be sustained in part and overruled in part. Plaintiffs contend that the recommendation (Dkt. 50) erred in stating that "Defendant Barrera seized Claudia on a public street." (Dkt. 53 at 15 (citing Dkt. 50 at 7).) The Court agrees and sustains the objection. Per the Complaint (Dkt. 1), which must be taken as true at this stage, Claudia was "in the corner of a private, residential, fenced-in lot" at the time of the incident. (*Id.* at 5.) In addition, Plaintiffs also contend that the recommendation (Dkt. 50) erred in

---

[7] In any case, Border Patrol agents are empowered to conduct law enforcement activities, including with deadly force, under their own specific set of statutory and regulatory provisions. 8 U.S.C. § 1357(a); 8 C.F.R. § 287.8(a)(2).

determining that Defendant Barrera's initial seizure was proper and that only his conduct afterwards, i.e., the use of deadly force, was at issue. To the extent that the Magistrate Judge distinguished between the seizure and the use of deadly force on more than semantic grounds, the Court sustains Plaintiffs' objection. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.").

Despite this, the Court is not persuaded by Plaintiffs' resulting legal conclusion that "[a]s in *Bivens*, the allegation here is one of seizure using unreasonable force in a residential setting." (*See* Dkt. 53 at 16.) Regardless of descriptive error, the Magistrate Judge was correct in considering the difference in location as relevant to the "new context" inquiry. Plaintiffs' characterization of the location as a "residential setting" places too much weight on an over-generalization. The corner of a residential lot "with overgrown weeds and brush," even if "fenced-in," is a far cry from the interior of a private home, the location of the incident in *Bivens*. (*See* Dkt. 1 at 5.) In any case, neither Claudia nor anyone else is alleged to have been living on that residential lot, which Plaintiffs additionally describe as "vacant." (*Id.*) Fifth Circuit precedent supports the Court's conclusion as well. In *Byrd*, the Fifth Circuit described the setting as different from *Bivens* because it "arose in a parking lot, not a private home." *Byrd*, 990 F.3d at 883. A similar distinction exists here: a vacant residential lot is not a private home. Thus, to the extent Plaintiffs object to the Magistrate Judge's legal conclusion as it relates to the location of the shooting, the objection is overruled.

3. *De Novo* **Determination**

Having considered Plaintiffs' objections to the Magistrate Judge's "new context" determination, the Court makes its own *de novo* determination of the "new context" inquiry. At

their base, Plaintiffs' claims "involve[] different conduct by [a] different officer[] from a different agency." *See Cantú*, 933 F.3d at 423. Using *Bivens* as the most apt comparison, the Court points to numerous meaningful differences here: (1) this case arises in a vacant residential lot, not a private home; (2) Defendant Barrera was purportedly conducting himself as a Border Patrol agent near the border, not making a warrantless search for narcotics in Claudia's home; (3) Plaintiffs do not allege that Defendant Barrera's conduct resulted from a narcotics investigation; and (4) Defendant Barrera neither manacled nor strip-searched Claudia in front of her family. *See Bivens*, 403 U.S. at 389; *see also Byrd*, 990 F.3d at 882 (emphasizing the same differences). And because this case is meaningfully different from *Bivens*, which concerned the most analogous fact-pattern, it is also meaningfully different from *Davis* and *Carlson* as well. The Court therefore concludes that Plaintiffs' claims arise in a new context and adopts the Magistrate Judge's legal conclusion as to the first step of the *Bivens* inquiry.

### B. "Special Factors" Objections

Having adopted the Magistrate Judge's conclusion that Plaintiffs' *Bivens* claims arise in a new context, the Court moves to the second step of the inquiry, and Plaintiffs' objections therein. Plaintiffs levy objections against the two special factors that the Magistrate Judge found in this case: (1) the availability of an alternative remedial structure in the Federal Tort Claims Act (FTCA); and (2) the national security implications of regulating an agent's conduct in close proximity to the border. (Dkt. 53 at 17–20.)

#### 1. Objection 1—Alternative Remedial Structure Special Factor

Plaintiffs' first objection appears to highlight some friction between Supreme Court and Fifth Circuit case law. Plaintiffs contend that the Magistrate Judge should not have found that the alternative remedial scheme provided by the FTCA is sufficient to constitute a special factor

militating against the extension of *Bivens*. (Dkt. 53 at 17.) Plaintiffs are correct that the Supreme Court in *Carlson* pronounced that it was "crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Carlson*, 446 U.S. at 20. Thus, the *Carlson* court determined that "without a clear congressional mandate we cannot hold that Congress relegated respondent exclusively to the FTCA remedy." *Id.* at 23. Further, Plaintiffs correctly assert that the Supreme Court has held that alternative remedies preclude the availability of a *Bivens* remedy only when such alternatives "provide roughly similar incentives" to deter unconstitutional conduct and also "provid[e] roughly similar compensation to victims of violations." *Minneci v. Pollard,* 565 U.S. 118, 129-30 (2012). In comparison, the Fifth Circuit in *Oliva* explicitly held that an administrative process that opened the door to an FTCA claim constituted an alternative remedial structure that weighed against inferring a new *Bivens* cause of action, without considering the adequacy of the available alternative. *Oliva*, 973 F.3d at 443–44.

While there appears to be some tension between these two holdings, a careful and contextual reading of both cases demonstrates that there is not. First, *Carlson*'s basic holding is that the existence of the FTCA alone does not preclude the existence of a *Bivens* claim, i.e., both can exist in certain cases. *See Carlson,* 446 U.S. at 23. It did not, however, foreclose a court's consideration of the FTCA as one of multiple factors to help decide whether *Bivens* should be extended into a new context.[8] *See Hernandez,* 140 S.Ct. at 750 n.12 ("[W]e explained that

---

[8] The Court notes that some confusion on this issue may stem from the varying approaches courts have taken to fit an "alternative remedial structure" finding into the two-step inquiry for extending *Bivens*. For example, in *Carlson*, the Supreme Court separated out the "alternative remedial structure" step from the "special factors" step. *Carlson,* 446 U.S. at 19. As *Bivens* case law has settled on an inquiry with only two distinct steps, the "alternative remedial structure" step appears to have collapsed into the "special factors" step. *See Hernandez*, 140 S.Ct. at 748–49 (describing alternative remedial structures as part of the special factors inquiry). This collapsed inquiry is reflected in the Fifth Circuit's recent jurisprudence as well. *See Oliva*, 973 F.3d at 443–44; *Cantú,* 933 F.3d at 423.

existence of alternative remedies was merely a further reason not to create *Bivens* liability."). That is the approach the Fifth Circuit took in *Oliva*, where it considered the existence of an FTCA claim as a factor along with separation of powers concerns. *Oliva*, 973 F.3d at 444. Accordingly, instructed by *Oliva*, the Court concludes that the Magistrate Judge was correct to consider the availability of the FTCA's remedial structure as one special factor weighing against extending *Bivens* to this context. Plaintiffs' objection is overruled.

### 2.     Objection 2—National Security Special Factor

Plaintiff finally objects to the Magistrate Judge's finding that there are national security implications here that constitute a special factor against extending *Bivens*. (Dkt. 53 at 18–20.) The plain holding of *Hernandez* controls here: "Since regulating the conduct of agents at the border unquestionably has national security implications, the risk of undermining border security provides reason to hesitate before extending *Bivens* into this field." *Hernandez*, 140 S.Ct. at 747. These national security implications arise because "the conduct of agents positioned at the border has a clear and strong connection to national security." *Id.* at 746. At the time of the incident, Defendant Barrera was a Border Patrol agent who was conducting his duties at the border. (*See* Dkt. 1 at 5.)

While Plaintiffs emphasize this case's distinctions from *Hernandez*—specifically, that the incident occurred only on domestic soil and a third of a mile from the border—those distinctions do not meaningfully change the Court's analysis. (*See* Dkt. 53 at 19.) An incident need not be cross-border to implicate national security concerns. Indeed, the Supreme Court in *Hernandez* determined such concerns were raised "at the border," not across the border. *See Hernandez*, 140 S.Ct. at 746–47 (separating out foreign policy concerns related to the cross-border nature of the incident and national security concerns related to "regulating the conduct of agents at the

border").

The Court must then determine whether a third of a mile from the border still constitutes "at the border" for the purposes of *Hernandez*'s holding. *Hernandez* itself provides some guidance here. In stating that the agent in *Hernandez* worked at the border, the Supreme Court offered as comparison that "Border Patrol agents often work miles from the border." *Hernandez*, 140 S.Ct. at 746. That was not the case here. Defendant Barrera appears to have been working in a small town that runs right up to the international border. (*See* Dkt. 1 at 4.) It is undisputed that Defendant Barrera was not "miles from the border"; the incident took place only a third of a mile from the border. Although Plaintiffs paint this distance as considerable, the Court must keep in mind that the watchword is caution when engaging in the "disfavored" judicial activity of expanding *Bivens*. Thus, the Court concludes, without pronouncing a bright line rule, that the shooting in the instant case occurred "at the border" for purposes of the national security special factor detailed in *Hernandez*.[9] Plaintiffs' objection is overruled, and the Magistrate Judge's findings on this special factor are adopted.

Before moving on, the Court recognizes Plaintiffs' concerns regarding the application of the national security special factor. As Plaintiffs note, "national-security concerns must not become a talisman used to ward off inconvenient claims—a 'label' used to 'cover a multitude of sins.'" *Ziglar*, 137 S.Ct. at 1862; *Cf., e.g., Korematsu v. United States*, 323 U.S. 214 (1944) (using national security to justify racial animus); *Ping v. United States*, 130 U.S. 581 (1889) (same). Neither the Court's decision here nor the Magistrate Judge's recommendation (Dkt. 50)

---

[9] Plaintiffs' contention that Defendant Barrera "was engaged in conventional law-enforcement activity—patrolling the quiet community of Rio Bravo" does not change the Court's conclusion. (*See* Dkt. 53 at 19.) This characterization does not modify the clear statements in Plaintiffs' Complaint (Dkt. 1), which the Court takes as true, that Defendant Barrera was acting within the course and scope of his employment as a Border Patrol agent. (*Id.* at 4.)

are made flippantly in this regard. "Rather, we apply [*Hernandez*'s] conclusion that regulating the conduct of agents at the border is a genuine national-security concern, not simply a useful talisman." *Quintero Perez v. United States*, 8 F.4th 1095, 1107 (9th Cir. 2021).

### 3. *De Novo* Determination

Having considered Plaintiffs' objections to the Magistrate Judge's conclusion that this case implicates special factors counseling against extending *Bivens*, the Court concludes that the Magistrate Judge's conclusion should be adopted. Apart from the special factors related to alternative remedial structures and national security concerns, the Court finds one more special factor that instructs against expanding *Bivens*: the absence of congressional action. In *Byrd*, the Fifth Circuit concluded that "Congress did not make individual officers statutorily liable for excessive-force or unlawful-detention claims" and determined that this inaction counseled against extending *Bivens*. *Byrd*, 990 F.3d at 882. In the immigration and border context, the Fifth Circuit has specifically explained why *Bivens* should not be extended where Congress has not acted. Although the context of its decision was somewhat different than the one here, the Fifth Circuit in *De La Paz v. Coy* explained that *Bivens* claims should not be extended in the immigration context because Congress has consistently declined to authorize damages remedies against individual agents despite extensive debate and legislation surrounding immigration. *See De La Paz v. Coy*, 786 F.3d 367, 377–78 (5th Cir. 2015). The Court cannot therefore ignore the similar separation of powers special factor here. Congress appears to have also stayed purposefully silent on the issue of providing remedy for excessive force claims against Border Patrol agents specifically, even where debates over immigration enforcement and the border continue to dominate the political milieu.

**Conclusion**

For the foregoing reasons, the Magistrate Judge's Report and Recommendation (Dkt. 50) is hereby ADOPTED IN PART and REJECTED IN PART pursuant to the sustained objections noted above. Defendant Romualdo Barrera's Motion to Dismiss (Dkt. 30) is hereby GRANTED, and Plaintiffs' *Bivens* claims are hereby DISMISSED.

IT IS SO ORDERED.

SIGNED this 29th day of September, 2021.

Diana Saldaña
United States District Judge