IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| GILBERTO GOMEZ VICENTE, individually as the surviving father of Claudia Patricia Gomez Gonzalez and as heir-at-law to the Estate of Claudia Patricia Gomez Gonzalez; LIDIA GONZALEZ VASQUEZ, individually as the surviving mother of Claudia Patricia Gomez Gonzalez and as heir-at-law to the Estate of Claudia Patricia Gomez Gonzalez; and RICARDO DE ANDA, in his capacity as Administrator of the Estate of Claudia Patricia Gomez Gonzalez, <br><br>  Plaintiffs, <br><br>  v. <br><br> UNITED STATES OF AMERICA; ROMUALDO BARRERA, Agent, United States Border Patrol, in his individual capacity. <br><br>  Defendants. | Case No. 5:20-CV-81 <br><br> **FIRST AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**PRELIMINARY STATEMENT**

1. On May 23, 2018, an agent of the United States Border Patrol, Defendant Romualdo Barrera, killed Claudia Patricia Gomez Gonzalez ("Claudia") by shooting her in the head. Both the agent and Claudia were on United States soil, several hundred yards from the U.S.-Mexico border at the Rio Grande, in the town of Rio Bravo, Texas. This civil rights action seeks damages against the United States for common law battery, negligence, gross negligence, and reckless conduct pursuant to the Federal Tort Claims Act, and against the agent who killed

Claudia pursuant to the Fourth and Fifth Amendments to the United States Constitution and, in the alternative, for common law battery.

2.  Claudia was a defenseless and unarmed twenty-year old woman who posed no threat whatsoever to the agent, or anyone else. Her killing was unjustified and unlawful, and an affront to the basic standards we expect government agents to abide by in a free country.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction over the *Bivens*[1] and Federal Tort Claims Act claims in this Complaint under 28 U.S.C. §§ 1331 and 1346(b)(1). This Court has supplemental jurisdiction over the common law battery claims brought in the alternative against Defendant Barrera under 28 U.S.C. § 1367.

4.  This Court has jurisdiction over the Federal Tort Claims Act claims against the United States because on May 23, 2019, administrative tort claims were submitted on Standard Form 95 to the U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), and U.S. Border Patrol ("BP"). More than six months have passed since the filing of the administrative claims without action by the agencies. Plaintiffs have therefore exhausted their administrative remedies under 28 U.S.C. § 2675(a). *See* Ex. A (Form SF-95).

5.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) & (e)(1)(B) because the act giving rise to this action occurred in this district and because, based on public

---

[1] This Court granted Defendant Romualdo Barrera's Motion to Dismiss Plaintiff's *Bivens* claims (Dkt. 30) labeled third, fourth, fifth, and sixth causes of action in this complaint. *See* Dkt. 81. The Fifth Circuit does not require inclusion of claims dismissed on the merits in a later amended complaint. *See Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 724 (5th Cir. 2015). Plaintiff's inclusion of these dismissed claims is to explicitly preserve the right to appeal the dismissal of the claims.

records, Defendant Barrera resides in Laredo, Texas. Venue is also proper under 28 U.S.C. § 1402(b) because the act giving rise to this action occurred in this district.

6. Intra-district assignment to the Laredo Division is proper because the incident giving rise to this action occurred in Webb County and because, based on public records, Defendant Barrera resides in Laredo, Texas.

## PARTIES

7. Plaintiff Gilberto Gomez Vicente resides in Guatemala. He is the father of the deceased, Claudia. He brings this lawsuit as Claudia's surviving father and as an heir-at-law of Claudia's estate.

8. Plaintiff Lidia Gonzalez Vasquez resides in Guatemala. She is the mother of the deceased, Claudia. She brings this lawsuit as Claudia's surviving mother and as an heir-at-law of Claudia's estate.

9. Plaintiff Ricardo de Anda resides in Laredo, Texas. He is the administrator of Claudia's estate and brings suit solely in that capacity.

10. Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act.

11. Defendant BP Agent Romualdo Barrera ("Defendant Barrera" or the "Agent") was at all times relevant to this Complaint an employee of the U.S. Border Patrol, a component of CBP, which is part of DHS. Upon information and belief, he was at all times relevant to this Complaint assigned to the Laredo South Station in the Laredo Sector and was the agent who shot and killed Claudia in Rio Bravo, Texas. He is sued in his individual capacity.

12. At all times relevant to this Complaint, Defendant Barrera was acting within the course and scope of his employment with the U.S. Border Patrol.

3

13. At all times relevant to this Complaint, Defendant Barrera was an investigative or law enforcement officer of the United States Government empowered by law to execute searches, to seize evidence, and to make arrests for violations of federal law. *See, e.g.*, 8 U.S.C. § 1357.

## FACTS

14. Claudia was a twenty-year-old, hardworking, studious, and caring young woman. She was an exemplary student and had studied accounting.

15. Claudia also helped her mother with household chores, was a devout member of her church group, and served her community nobly and humbly. Claudia was well respected and known for her willingness to help and uplift those around her.

16. Rio Bravo is a quiet, small Texas town of just under 5,000 people. It is located on the outskirts of Laredo. It is bordered on the west by the Rio Grande, the international border between Mexico and the United States.

17. Rio Bravo largely consists of modest single-story homes, located along four streets that run perpendicular to the river. In 2016, the FBI's Uniform Crime Reporting program reported *zero* incidents of violent crime in Rio Bravo—making it the safest town in Texas.

18. Local Border Patrol agents are familiar with Rio Bravo. The Webb County Detention Center and Rio Grande Detention Center are just to the north of town.

19. Shortly after noon on May 23, 2018, Claudia was traveling along Centeno Lane in Rio Bravo, about one-third of a mile from the river, with a small group of people. On information and belief, this group included Carlos Perez Vicente, Damian Mendez Penalonso, Ever Cabrera Sanchez, and two other men.

20. Claudia wore jeans, a light grey t-shirt, and a hoodie, with her hair tied back in a ponytail. She was not carrying a bag, backpack, or any visible objects. She did not have any weapons. Nor did she have anything that could even be perceived as a weapon.

21. Claudia and the people she was with were in the corner of a private, residential, fenced-in lot with overgrown weeds and brush. On information and belief, that was where Defendant Barrera came into contact with them.

22. When Defendant Barrera approached, no one in the group had anything in their hands that could be construed or perceived as a weapon. No one in the group was carrying anything that could be construed or perceived as dangerous or threatening. And no one in the group ran toward, threatened, attacked, grabbed or touched the Agent. All members of this group were unarmed, and all either fled or hid. Those who remained in the lot with Claudia were scared and tried to avoid coming into contact with the Agent.

23. Claudia stayed in hiding in the vacant lot. After other members of the group fled, Defendant Barrera drew his weapon. Claudia subsequently stood up to attempt to run away from the approaching Agent. At that moment, Defendant Barrera aimed at her, pulled the trigger, and shot her in the head. Claudia fell to the ground, face down.

24. A local resident, whose home was located between the residential lot and an old mobile home structure where two people Claudia was traveling with went to hide, heard the gunshot. She then grabbed her phone to begin recording the incident on video. Soon after, another BP agent, Nathaniel S. Farley, arrived at the scene and attempted to render aid. He attempted to turn Claudia over, revealing blood across one side of her face. As Claudia lay dying, she opened her mouth and gasped for air. When Agent Farley began rendering aid, he initially detected a weak pulse. Agent Farley radioed for an EMS and applied a dressing to

Claudia. Upon information and belief, Claudia was alive at this time. Claudia's pulse eventually flat-lined, and she was declared dead. It took Claudia several minutes to die.

25.     Claudia died from a gunshot wound to the head, which entered the back of her head and exited via the upper left side of her head, consistent with Claudia facing away from the Agent when she was shot. The Webb County Medical Examiner who subsequently conducted Claudia's autopsy determined the manner of death was homicide.

26.     CBP's "Use of Force Policy, Guidelines, and Procedures Handbook" (the "Handbook") states that agents like Defendant Barrera "may use deadly force only when necessary, that is, when the officer/agent has a reasonable belief that the subject of such force poses an imminent danger of serious physical injury or death to the officer/agent or to another person." Under CBP's Handbook, which was in effect at the time of the shooting, discharging a weapon "as a warning or signal is prohibited." Moreover, "[d]eadly force is not authorized solely to prevent the escape of a fleeing subject."

27.     Claudia posed no threat to anyone, as would have been obvious from the slightest glance. She was a petite woman of small build. She was clearly unarmed and scared. She was not carrying anything that could even remotely be perceived as a weapon or any other kind of threat.

28.     No one else in Claudia's group created any threat of danger either—not to the Agent, and not to anyone else. No one other than Defendant Barrera had any weapons. No one did anything that could remotely be construed as threatening or violent, let alone as posing or having posed any imminent danger of serious physical injury or death.

29.     At no time did the local resident who recorded the aftermath hear or witness any indication that Claudia posed a threat to the Agent.

30.     Following the shooting, CBP issued a press release stating that members of Claudia's group had used "blunt objects" to attack the Agent, and that Claudia was "one of the assailants." CBP later retracted that statement and issued a new statement—which did not include any reference to blunt objects, and which also did not include any allegations that Claudia had assaulted the Agent. Upon information and belief, CBP retracted the statement and issued the new statement because it had determined that the Agent's claims that he was assaulted were not credible.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Federal Tort Claims Act—Wrongful Death and Survival Statute—Against Defendant United States of America)**

31.     Plaintiffs incorporate paragraphs 14-30, as set forth above.

32.     At all times relevant to this Complaint, Defendant Barrera was an investigative or law enforcement officer of the United States Government empowered by law to execute searches, to seize evidence, and to make arrests for violations of federal law.

33.     Defendant Barrera, who was an employee or agent of the United States acting in the course of his duties as a BP Agent, intentionally caused harmful or offensive contact with Claudia by intentionally firing a weapon at her and intentionally shooting her in the head, causing Claudia to suffer injury and death.

34.     Defendants' shooting of Claudia constituted excessive and unreasonable force and was unauthorized, unprivileged, and unlawful.

35.     Defendant Barrera's battery directly and proximately caused (i) Claudia's pre-death pain and suffering, including pain and emotional injury; and (ii) Claudia's parents to suffer

emotional distress, loss of companionship, and loss of financial support due to the death of their daughter.

36. The United States is directly and vicariously liable for Defendant Barrera's battery. Defendant Barrera was an investigative or law enforcement officer who was empowered by law to execute searches, to seize evidence, and to make arrests, and accordingly the United States is not immune from liability for its intentional torts.

37. Pursuant to the Texas Wrongful Death Statute, Plaintiffs are entitled to bring this action for the benefit of Claudia's parents.

38. Pursuant to the Texas Survival Statute, Plaintiffs are entitled to bring these claims for the benefit of Claudia's heirs, legal representatives, and estate.

## SECOND CAUSE OF ACTION
### Negligence, Gross Negligence, and Recklessness
### (Federal Tort Claims Act—Wrongful Death and Survival Statute—Against Defendant United States of America)

39. Plaintiffs incorporate paragraphs 14-30, as set forth above.

40. At all times relevant hereto, DHS was an executive department of the United States, CBP was a component agency of DHS, and U.S. Border Patrol was a component of CBP. *See* 6 U.S.C. §§ 111, 211.

41. DHS and CBP (including its component, BP), had a duty to execute their agency functions in a manner that avoids causing the unreasonable, excessive, and unprovoked harm, injury, and death of third parties.

42. DHS and CBP (including its component, BP) breached this duty when (i) one of their employees or agents acted unreasonably or recklessly, resulting in an agent of the BP shooting Claudia, for which DHS and CBP are directly and vicariously liable; (ii) DHS and CBP failed to supervise the Agent to ensure that the Agent took reasonable steps to avoid harm to

others; (iii) DHS and CBP failed to train the Agent to ensure that the Agent did not unlawfully use lethal force; and (iv) DHS and CBP failed to take reasonable steps in planning the operation to minimize the risk that lethal force would be used.

43. As a direct and proximate result of this negligence, gross negligence, and reckless conduct, (i) Claudia suffered pre-death pain and suffering, including pain and emotional injury; and (ii) Claudia's parents suffered emotional distress, loss of companionship, and loss of financial support due to the death of their daughter.

44. Pursuant to the Texas Wrongful Death Statute, Plaintiffs are entitled to bring this action for the benefit of Claudia's parents.

45. Pursuant to the Texas Survival Statute, Plaintiffs are entitled to bring these claims for the benefit of Claudia's heirs, legal representatives, and estate.

### THIRD CAUSE OF ACTION
### Excessive, Unreasonable Force in Violation of the Fourth Amendment to the U.S. Constitution
### (*Bivens* Claim—Wrongful Death—Against Defendant Barrera)

46. Plaintiffs incorporate paragraphs 14-30, as set forth above.

47. At all relevant times, Defendant Barrera was acting under the color of law.

48. Defendant Barrera's actions under the color of federal law deprived Claudia of her right to be free from unreasonable seizures by using excessive and unreasonable lethal force against her, in violation of the Fourth Amendment to the U.S. Constitution.

49. At the time Defendant Barrera killed Claudia, neither Claudia nor anyone else at the scene posed or could reasonably be perceived to be posing any danger at all, let alone any danger of death or serious bodily harm. Defendant Barrera's use of lethal force was objectively unreasonable.

50. At the time when Defendant Barrera shot Claudia, it was well-established that the Fourth Amendment to the United States Constitution does not permit government officers to use lethal force against a person unless that person poses an immediate and significant threat of death or bodily harm to the officers or to the public.

51. Defendant Barrera's excessive and unreasonable use of force directly and proximately caused Claudia's death.

52. Defendant Barrera's excessive and unreasonable use of force directly and proximately caused (i) Claudia's pre-death pain and suffering, including pain and emotional injury; and (ii) Claudia's parents to suffer emotional distress, loss of companionship, and loss of financial support due to the death of their daughter.

53. This cause of action for the violation of Plaintiffs' Fourth Amendment rights is brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

54. Pursuant to the Texas Wrongful Death Statute, Plaintiffs are entitled to bring this action for the benefit of Claudia's parents.

55. Defendant Barrera acted with the specific intent to cause substantial injury and harm when shooting Claudia. The acts of Defendant Barrera also involved an extreme degree of risk of which Defendant Barrera had actual subjective awareness. Defendant Barrera's acts were criminal, knowing and intentional, and constituted the crimes of, among other crimes, murder and aggravated assault. Plaintiffs are therefore entitled to exemplary or punitive damages.

**FOURTH CAUSE OF ACTION**
**Excessive, Unreasonable Force in Violation of the Fourth Amendment to the U.S. Constitution**
***(Bivens* Claim—Survival Statute—Against Defendant Barrera)**

56. Plaintiffs incorporate paragraphs 14-30, as set forth above.

57. At all relevant times, Defendant Barrera was acting under the color of law.

58. Defendant Barrera's actions under the color of federal law deprived Claudia of her right to be free from unreasonable seizures by using excessive and unreasonable lethal force against her, in violation of the Fourth Amendment to the U.S. Constitution.

59. At the time Defendant Barrera killed Claudia, neither Claudia nor anyone else at the scene posed or could reasonably be perceived to be posing any danger at all, let alone any danger of death or serious bodily harm. Defendant Barrera's use of lethal force was objectively unreasonable.

60. At the time when Defendant Barrera shot Claudia, it was well-established that the Fourth Amendment to the United States Constitution does not permit government officers to use lethal force against a person unless that person poses an immediate and significant threat of death or bodily harm to the officers or to the public.

61. Defendant Barrera's excessive and unreasonable use of force directly and proximately caused Claudia's pre-death suffering, including pain and emotional injury.

62. This cause of action for the violation of Plaintiffs' Fourth Amendment rights is brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

63. Pursuant to the Texas Survival Statute, Plaintiffs are entitled to bring these claims for the benefit of Claudia's heirs, legal representatives, and estate.

64. Defendant Barrera acted with the specific intent to cause substantial injury and harm when shooting Claudia. The acts of Defendant Barrera also involved an extreme degree of risk of which Defendant Barrera had actual subjective awareness. Defendant Barrera's acts were criminal, knowing and intentional, and constituted the crimes of, among other crimes, murder and aggravated assault. Plaintiffs are therefore entitled to exemplary or punitive damages.

**FIFTH CAUSE OF ACTION**
**Deprivation of Due Process in Violation of the Fifth Amendment to the U.S. Constitution**

**(*Bivens* Claim—Wrongful Death—Against Defendant Barrera)**

65. Plaintiffs incorporate paragraphs 14-30, as set forth above.

66. At all relevant times, Defendant Barrera was acting under the color of law.

67. As a direct result of his actions set forth in this Complaint, Defendant Barrera intentionally acted under the color of federal law to deprive Claudia of her right not to be deprived of her life without due process of law, in violation of the Fifth Amendment to the U.S. Constitution.

68. By intentionally and fatally shooting Claudia, Defendant Barrera deprived Claudia of her right to not be deprived of her life without due process.

69. Defendant Barrera's intentional shooting and killing of Claudia constituted actions that shock the conscience, violate the decencies of civilized conduct, or interfere with the rights implicit in the concept of ordered liberty.

70. Thus, Defendant Barrera's actions under the color of federal law caused Claudia's loss of life without due process of law.

71. Defendant Barrera's fatal shooting of Claudia which resulted in the deprivation of Claudia's due process right caused (i) Claudia's pre-death pain and suffering, including pain and emotional injury; and (ii) Claudia's parents to suffer emotional distress, loss of companionship, and loss of financial support due to the death of their daughter.

72. This cause of action for the violation of Plaintiffs' Fifth Amendment rights is brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

73. Pursuant to the Texas Wrongful Death Statute, Plaintiffs are entitled to bring this action for the benefit of Claudia's parents.

74. Defendant Barrera acted with the specific intent to cause substantial injury and harm when shooting Claudia. The acts of Defendant Barrera also involved an extreme degree of risk of which Defendant Barrera had actual subjective awareness. Defendant Barrera's acts were criminal, knowing and intentional, and constituted the crimes of, among other crimes, murder and aggravated assault. Plaintiffs are therefore entitled to exemplary or punitive damages.

### SIXTH CAUSE OF ACTION
**Deprivation of Due Process in Violation of the Fifth Amendment to the U.S. Constitution**
*(Bivens* Claim—Survival Statute—Against Defendant Barrera)

75. Plaintiffs incorporate paragraphs 14-30, as set forth above.

76. At all relevant times, Defendant Barrera was acting under the color of law.

77. As a direct result of his actions set forth in this Complaint, Defendant Barrera intentionally acted under the color of federal law to deprive Claudia of her right not to be deprived of her life without due process of law, in violation of the Fifth Amendment to the U.S. Constitution.

78. By intentionally and fatally shooting Claudia, Defendant Barrera deprived Claudia of her right to not be deprived of her life without due process.

79. Defendant Barrera's intentional shooting and killing of Claudia constituted actions that shock the conscience, violate the decencies of civilized conduct, or interfere with the rights implicit in the concept of ordered liberty.

80. Thus, Defendant Barrera's actions under the color of federal law caused Claudia's loss of life without due process of law.

81. Defendant Barrera's fatal shooting of Claudia which resulted in the deprivation of Claudia's due process right caused Claudia's pre-death suffering, including pain and emotional injury.

82. This cause of action for the violation of Plaintiffs' Fifth Amendment rights is brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).

83. Pursuant to the Texas Survival Statute, Plaintiffs are entitled to bring these claims for the benefit of Claudia's heirs, legal representatives, and estate.

84. Defendant Barrera acted with the specific intent to cause substantial injury and harm when shooting Claudia. The acts of Defendant Barrera also involved an extreme degree of risk of which Defendant Barrera had actual subjective awareness. Defendant Barrera's acts were criminal, knowing and intentional, and constituted the crimes of, among other crimes, murder and aggravated assault. Plaintiffs are therefore entitled to exemplary or punitive damages.

### SEVENTH CAUSE OF ACTION
### Battery
### (In the Alternative—Wrongful Death—Against Defendant Barrera)

85. Plaintiffs incorporate paragraphs 14-30, as set forth above.

86. Plaintiffs bring this claim in the alternative to Plaintiffs' third through sixth claims.

87. Defendant Barrera intentionally caused harmful or offensive contact with Claudia by intentionally firing a weapon at her and intentionally shooting her in the head.

88. Defendant Barrera's shooting of Claudia constituted excessive and unreasonable force and was unauthorized, unprivileged, and unlawful.

89. Defendant Barrera's battery directly and proximately caused (i) Claudia's pre-death pain and suffering, including pain and emotional injury; and (ii) Claudia's parents to suffer emotional distress, loss of companionship, and loss of financial support due to the death of their daughter.

90. Pursuant to the Texas Wrongful Death Statute, Plaintiffs are entitled to bring this action for the benefit of Claudia's parents.

91. Defendant Barrera acted with the specific intent to cause substantial injury and harm when shooting Claudia. The acts of Defendant Barrera also involved an extreme degree of risk of which Defendant Barrera had actual subjective awareness. Defendant Barrera's acts were criminal, knowing and intentional, and constituted the crimes of, among other crimes, murder and aggravated assault. Plaintiffs are therefore entitled to exemplary or punitive damages.

## EIGHTH CAUSE OF ACTION
### Battery
### (In the Alternative—Survival Statute—Against Defendant Barrera)

92. Plaintiffs incorporate paragraphs 14-30, as set forth above.

93. Plaintiffs bring this claim in the alternative to Plaintiffs' third through sixth claims.

94. Defendant Barrera intentionally caused harmful or offensive contact with Claudia by intentionally firing a weapon at her and intentionally shooting her in the head.

95. Defendant Barrera's shooting of Claudia constituted excessive and unreasonable force and was unauthorized, unprivileged, and unlawful.

96. Defendant Barrera's battery directly and proximately caused (i) Claudia's pre-death pain and suffering, including pain and emotional injury; and (ii) Claudia's parents to suffer emotional distress, loss of companionship, and loss of financial support due to the death of their daughter.

97. Pursuant to the Texas Survival Statute, Plaintiffs are entitled to bring these claims for the benefit of Claudia's heirs, legal representatives, and estate.

98. Defendant Barrera acted with the specific intent to cause substantial injury and harm when shooting Claudia. The acts of Defendant Barrera also involved an extreme degree of risk of which Defendant Barrera had actual subjective awareness. Defendant Barrera's acts were criminal, knowing and intentional, and constituted the crimes of, among other crimes, murder and aggravated assault. Plaintiffs are therefore entitled to exemplary or punitive damages.

## JURY TRIAL DEMANDED

99. Plaintiffs respectfully demand a jury trial for all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask this Court to:

a. Declare that the actions of Defendants violated the U.S. Constitution;

b. Grant Plaintiffs a trial by jury as to all claims so triable;

c. Award compensatory damages in an amount to be determined at trial;

d. Award exemplary or punitive damages in an amount to be determined at trial;

e. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

f. Grant such other and further relief as this Court deems proper.

//

Dated: April 18, 2022

Yosef J. Riemer*
N.Y. Bar No. 2703585
Joseph A. Loy
N.Y. Bar No. 4300042;
S.D. Tex. Bar No. 3546265
Giselle Sedano*
N.Y. Bar No. 5618186
Hyunjong Ryan Jin*
N.Y. Bar No. 5631619
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
yriemer@kirkland.com
jloy@kirkland.com
giselle.sedano@kirkland.com
ryan.jin@kirkland.com

David Dyer
Tex. Bar No. 24089580
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Telephone: (512) 678-9100
Facsimile: (512) 678-9101
david.dyer@kirkland.com

Respectfully submitted,

/s/ *Edgar Saldivar*
Edgar Saldivar (Attorney-In-Charge)
Tex. Bar No. 24038188;
S.D. Tex. Bar No. 618958
Andre Segura
Tex. Bar No. 24107112;
S.D. Tex. Bar No. 3123385
Kathryn Huddleston
Tex. Bar No. 24121679
S.D. Tex. Bar No. 3541079
ACLU FOUNDATION OF TEXAS
5225 Katy Fwy., Suite 350
Houston, Texas 77007
(713) 942-8146
esaldivar@aclutx.org
asegura@aclutx.org
khuddleston@aclutx.org

Bernardo Rafael Cruz*
Tex. Bar No. 24109774
ACLU FOUNDATION OF TEXAS
109 N. Oregon St., Suite 600
El Paso, TX
(915) 308-7163
brcruz@aclutx.org

Lee Gelernt*
N.Y. Bar No. 2502532
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2600
Fax: (212) 549-2654
lgelernt@aclu.org

\* *Pro hac vice*